MARTHA ROSE *v.* STATE OF MARYLAND

[Nos. 22, 23, January Term, 1940.]

*Decided January 25th, 1940.*

The cause was argued before BOND, C. J., OFFUTT, SLOAN, MITCHELL, and JOHNSON, JJ.

*Leo Weinberg,* with whom was *E. Austin James* on the brief, for the appellant.

*William C. Walsh, Attorney General,* and *Robert E. Clapp, Jr., Assistant Attorney General,* with whom was *Patrick M. Schnauffer, State's Attorney for Frederick County,* on the brief, for the State.

BOND, C. J., delivered the opinion of the Court.

In more than one respect these appeals fail to comply with the requirements for review in this court, but as they are taken from a conviction of murder in the first degree and a sentence of death, the court has examined what is presented in a brief record; and it has found no showing of error in the trial proceedings. Having actually reviewed the case, or so much of the proceedings as the record recites, it will affirm the judgment rather than dismiss the appeals.

The docket entries reproduced show that upon her arraignment Martha Rose, appearing by attorney, pleaded "Not guilty," and elected to be tried by a jury, but on coming to the trial withdrew that election and, instead, elected to be tried by the court without a jury. No objection to the verdict, or reason why sentence should not be imposed, was offered by the accused when asked by the court for any she might have, and sentence was imposed on October 9th, 1939. The first appeal was then entered. There was no bill of exceptions.

On the following November 3rd, after the case had been so appealed, the accused by her attorneys moved that the judgment and sentence be stricken out because she had been deprived of her constitutional rights in being tried without a jury, and because the verdict and sentence had not been entered in accordance with the requirements of section 6, article 59 of the Code, concerning proceedings on pleas of insanity. The motion, in writing, alleged an obvious mental degeneracy. It was heard and overruled, and the second appeal was entered from that action. The recitals in the docket entries in themselves show no error or irregularity; such a showing could only be added by the motion if added at all; and the appeals may be considered as if one.

For the first time in the state it is objected that in the allowance of election of trial by the court without a jury there is violation of the constitutional provisions regarding jury trials in criminal cases. The Declaration of Rights, in article 5, provides that the people are "entitled to the Common Law of England, and the trial by Jury, according to the course of that law;" in article 21, "That in all criminal prosecutions, every man hath a right * * * to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty;" and in article 23, "That no man ought to be * * * in any manner destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the Land." These provisions have been contained in all constitutions of the state, including the first, of

1776. In addition, the Constitution of 1851 and subsequent Constitutions have provided that, "In the trial of all criminal cases, the jury shall be the Judges of Law, as well as of fact." Constitution of 1867, art. XV, sec. 5.

If any of these clauses might otherwise be read as commanding trials by jury in all criminal cases, it is to be borne in mind that trials without juries have regularly been allowed since near the founding of the province, if not from the beginning, and the clauses were all adopted while the practice was in vogue, and were never regarded as causing any interruption of it. Explanatory theories seem to have varied somewhat. Statutes adopted soon after the settlement provided that a jury trial should be allowed in a case of crime affecting life or member, or in any other case upon security given by the accused to pay the cost of it; and instances of trials without juries appear in some of the records of the Provincial Court and county courts of that century. *Archives of Maryland,* vol. 1, 83 and 151; vol. 4, 165. And so it was during the 18th century, before and after the Revolution. The practice was then usually supposed to have been derived from the old English practice of confession and submission in minor cases, although innocence was nevertheless provable, and acquittals were obtained. 2 *Hawkins, Pleas of the Crown,* ch. 31; *Jenifer v. Lord Proprietary,* 1774, 1 H. & McH. 535; and *Miller v. Lord Proprietary,* 1774, 1 H. &. McH. 543. A statute of 1793, November Session, ch. 57, provided that submission should always be so far an admission of the crime or offense charged as to render the person submitting liable to the costs of prosecution; and an Act of 1809, November Session, ch. 144, reciting reasons for encouraging the practice, removed this penalty of liability for costs. In Acts 1852, ch. 344, it was enacted that all cases, even capital cases, might be so tried, and the Code of 1860 contained the revised provision which is still the law, that any person presented or indicted "may * * * traverse the same before the court, who shall thereupon try the law and the facts." Code of 1924, art. 27, sec. 549; *State v. Tibbs,* 3 H. &

McH. 83; *State v. Buchanan,* 5 H. & J. 317, 368, 500, note; 9 *Am. Dec.* 534; *Rawlings v. State,* 2 Md. 201; *League v. State,* 36 Md. 257. The very men who adopted the constitutions, then, or their contemporaries, conceived of the clauses as in harmony with the familiar practice, and we are compelled to take this to be their meaning. *Wyatt v. State Roads Commn.,* 175 Md. 258, 1 A. 2nd 619; *Norris v. Baltimore,* 172 Md. 667, 192 A. 531; *Finan v. City of Cumberland,* 154 Md. 563, 567, 141 A. 269. There is hardly an institution in the state more firmly established. To the knowledge of men now living, trials without juries have long been elected in the greater number of criminal cases in the state, and in the criminal courts of Baltimore City, where the number of such cases is naturally greater than in other jurisdictions, more than ninety per cent of all trials have for many years been held without juries.

Strictly speaking, there is in this no waiver of a requirement of jury trial. It is more accurate to say that an equally normal method is elected. And there is no reason for disapproving it as a deprivation of something an accused should have. It is demonstrated that there is a pronounced desire for it. And for persons who fear the effect of any prejudice in the jury box, racial or other prejudice, it is a boon.

Clearly therefore the appellant suffered no deprivation in being given her election, and there was nothing improper in trying her case as it was tried. Her attorneys object that the recitals in the docket entries do not show that the election was made by the accused in person rather than by attorney, or show other desirable safeguards, but nothing else is required under the law and regular practice. The recital is that she made the election. But if her attorney made it, that was regular and proper. There is no grievance in any action below in this respect.

It is conceded that there was no defence of insanity pleaded, and the docket entries, of course, show none. The court did not have the question presented for any

ruling and action, and there was none in which error could be found. The verdict is not required to include any reference to insanity when insanity is not pleaded. Code, art. 59, sec. 6. The statute provides, in fact, that even when the defence has been pleaded, if the verdict does not contain, as it does not here, a finding on insanity, it shall be conclusively presumed that there was a finding of sanity.

The attorneys ask consideration of a statement in the brief which, after the trial, was submitted to the court below for its signature, but is unsigned. In substance it is that, during final argument on the appellant's behalf, her attorney remarked that while a psychiatrist who examined the accused would say that in his opinion she knew the difference between right and wrong, yet the commission of the crime within ten or eleven months after her release from service of a sentence of imprisonment for a crime commited in a similar manner would tend to show that her mind had in some way been affected. The court is said to have interposed then a question whether in the other case the woman had not used an axe; and the attorney replied, "Yes." There was no objection to the question at the time, but now it is objected that the court appears to have allowed itself to be influenced by the fact of the earlier crime. That conclusion is hard to draw. The court knew from the preceding argument, if not otherwise, that the earlier crime had been committed, so that no new information was being given it. And there is nothing to show improper influence from the facts in arriving at the verdict.

Giving the appellant's contentions all possible consideration, the court could not find any error in the proceedings recited. And having reviewed them, it affirms the judgment, as stated.

*Judgment affirmed, with costs.*