## STATE OF MARYLAND *v.* HUTCHINSON

[No. 160, September Term, 1970.]

*Decided December 16, 1970.*

228

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Edward F. Borgerding, Assistant Attorney General,* on the brief, for appellant.

*E. Thomas Maxwell, Jr.,* for appellee.

FINAN, J., delivered the opinion of the Court.

We granted certiorari in this case to review the question of whether or not the trial judge, sitting as a jury, erred in preliminarily admitting into evidence, over objections, the inculpatory statement of the accused ob-

tained during a custodial interrogation and taken in violation of *Miranda* guidelines. The trial judge subsequently rejected the statement at the close of trial and declared that he would completely disregard it in reaching a verdict. The accused was found guilty of first degree murder and rape, and sentenced to life imprisonment on both charges, the sentences to run concurrently. On appeal to the Court of Special Appeals the judgment was reversed and the case remanded for a new trial because, in the opinion of the court, the "mere knowledge of the substance of the confession by the trier of the facts necessarily tended to deprive appellant [accused and appellee here] of his constitutional right to a fair trial."

The following facts are essential to an understanding of the issue as we view it:

On May 30, 1966, Judith Jones, a nine year old child was raped in her home in Baltimore City and died at the hospital shortly thereafter. The accused came into custody of the Provost Marshal's Office at Fort Lee, Virginia, on June 2, 1966, in connection with these offenses. Thereafter he was transported to Baltimore City where he remained in the Central Police Station lockup. After several days of sporadic custodial interrogation, he made a statement on June 5, 1966, implicating himself in the crimes for which he had been arrested. However, he immediately repudiated the statement in the presence of the Deputy State's Attorney, to whom the statement had been made. Nevertheless, he was indicted for both offenses on June 14, 1966, one day after *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602 was decided.

A motion to suppress any alleged statements made by the accused was filed on his behalf, and over a five month period numerous evidentiary hearings were held before Judge Meyer M. Cardin. On November 3, 1967, Judge Cardin ruled that the accused had waived his *Miranda* rights because he had indicated to the police that he did not want counsel to represent him. The Court of Special Appeals in this case used the following language in commenting on Judge Cardin's ruling:

"Judge Cardin's ruling was reached despite the fact that the appellant was never fully warned of the extent of his right to counsel, including the admonition that if he was indigent, a lawyer would be appointed to represent him. And it was reached in the face of our decision in *Robinson v. State*, 1 Md. App. 522, 231 A. 2d 920, decided July 24, 1967, holding that it was prejudicial error to permit a pre-*Miranda* confession to be introduced in evidence over objection in a post-*Miranda* trial where the accused had not been advised of his right to counsel, if indigent." *Hutchinson v. State*, 9 Md. App. 41, 262 A. 2d 321 (1970).

The trial commenced on August 19, 1968, before Judge Harry A. Cole, without a jury. Judge Cole indicated that he was bound by the decision of Judge Cardin that the confession was voluntarily made and was therefore admissible and the State introduced extensive testimony in support of its introduction of the confession into evidence. Counsel for accused continually objected to the introduction of the confession and each objection was overruled on the grounds that the trial court was bound by the preliminary ruling. At the conclusion of the State's case, a motion for judgment of acquittal was denied on the grounds that the confession was properly in evidence and that the State had made out a prima facie case regarding its admissibility. *Ralph v. State*, 226 Md. 480, 487, 174 A. 2d 163 (1961). After the accused introduced evidence, rested and renewed his motions to suppress and for judgment of acquittal, the court stated that it found as a fact that the confession was unreliable, untrustworthy, and not the free and voluntary act of the accused because of police action during the interrogation which in its mind raised the suspicion of coercion, and other deficiencies with respect to the procedural guidelines of *Miranda*. The court stated that it was completely disregarding the confession in its consideration of the case. The taking of testimony was concluded on August 23, 1968. The

court held the matter sub curia until September 18, 1968, a period of almost a month, before rendering its verdict finding the appellee guilty of murder and rape based on the circumstantial evidence in the case.

The Court of Special Appeals of Maryland in an unanimous opinion written by Chief Judge Murphy, reversed and remanded the case for a new trial. The court said:

> "Despite the fact that unlike *Barnhart* Judge Cole was sitting without a jury, and expressly stated that he would not consider appellant's confession in determining guilt, we think the facts of this case are such that the mere knowledge of the substance of the confession by the trier of fact necessarily tended to deprive appellant of his constitutional right to a fair trial. Elementary fairness dictates that the State reap no benefit, however indirect it may appear, from the gross error it committed in placing such an obviously involuntary confession before the factfinder. A new trial at which the confession will not be admitted is, we think, imperatively mandated under the facts of this case." 9 Md. App. at 46, 47.

From a standpoint of jurisprudence we think the issue before us goes to the very marrow of the role, function, and capacity of the judge in our legal system.

The Court of Special Appeals, through its interpretation and application of dictum found in *Barnhart v. State*, 5 Md. App. 222, 226, 227, 246 A. 2d 280 (1968) to the case at bar, equated the role of the judge solely with that of the jury as trier of facts to the complete exclusion of his role as the trial judge, whose function is also to pass upon the admissibility of evidence. Inherent in his capacity of trial judge is the dual role of not only trier of facts (judging the credibility and weight of the evidence) but also that of judge of the law of the case (passing upon the admissibility of evidence). *Day v. State*, 196 Md. 384, 399, 76 A. 2d 729 (1950).

The Court of Special Appeals in its opinion in the instant case, *Hutchinson, supra,* further stated:

"In *Barnhart v. State,* 5 Md. App. 222, 226-227, 246 A. 2d 280, we held that if a confession heard by a jury was later declared by the court to be inadmissible, and the jury admonished not to consider it as part of the evidence in the case, the jury's knowledge of the confession was nevertheless such as was apt to unduly influence its deliberations to the extent of depriving the defendant of a fair and impartial trial. * * *" 9 Md. App. at 46.

Actually, this was not the holding in *Barnhart,* which dealt with the adequacy of the lower court's instruction to the jury on the voluntariness of the confession in light of statements which the trial judge had made concerning the admissibility of that confession. What the court in *Hutchinson* was referring to in *Barnhart* was dicta, in which *Barnhart* reviewed the prior dicta of this Court in *Smith v. State,* 189 Md. 596, 606, 56 A. 2d 818 (1948), wherein our predecessors had quoted from *Tooisgah v. United States,* 137 F. 2d 713, 716 (10th Cir. 1943). We do, however, agree that the above quotation from *Hutchinson* is a correct statement of the law as it applies to jury trials.

It is also interesting to note that in the *Smith* case, which the Court of Special Appeals cites in its opinion in the instant case, and which is cited and quoted in *Barnhart, supra,* the confession was admitted in evidence without any preliminary hearing on its admissibility held out of the presence of the jury. In the instant case, although a nonjury case, there had been a preliminary hearing on the admissibility of the evidence before a judge other than the trial judge.

The fact remains that in the instant case the Court of Special Appeals looked no further than to Judge Cole's role as a trier of facts and emphasized that, "We think the facts of this case are such that the mere knowledge

of the substance of the confession by the trier of fact necessarily tended to deprive appellant [accused] of his constitutional right to a fair trial. * * *" 9 Md. App. at 47.

This assumption of the court might be valid were we to first, not believe the trial judge's statement that he was disregarding and eliminating from his deliberations the substance of the inadmissible confession, and secondly, choose to ignore the professional expertise, experience, and judicial temperament with which our legal system has inherently invested a trial judge *vis a vis* a jury comprised of laymen. It is true that judges, being flesh and blood, are subject to the same emotions and human frailties as affect other members of the specie; however, by his legal training, traditional approach to problems, and the very state of the art of his profession, he must early learn to perceive, distinguish and interpret the nuances of the law which are its "warp and woof."

The rationale of the opinion of the Court of Special Appeals in reversing the judgment of the trial judge in this case leads to but one conclusion and that is that in no instance where a trial judge hears a pre-trial motion to suppress evidence could he try the case on its merits.

Furthermore, although it is true that the Court of Special Appeals was disturbed by the fact that the trial judge in this case learned of the details of the inculpatory statement, the rationale, if one accepts the court's original premise, might apply equally to any judge who had learned of the mere existence of the statement. Any judge who has read the opinion of the Court of Special Appeals (and we assume that they all have) has learned at least that there was an inculpatory statement made by the accused in this case. This would be knowledge which, if learned by a jury, would be grounds for a mistrial. If we were going to equate the role of the trial judge solely with that of the jury as trier of facts (as we believe the Court of Special Appeals did in its opinion), how then would any judge be found who would not be disqualified from hearing this case on remand? In such an event, the

234

anomalous situation would result in which it would be-
come virtually impossible to give the accused a fair trial,
except by a jury. This would frustrate the accused's elec-
tion of a trial by court.

We should keep in mind the fact that nowhere in its
opinion does the Court of Special Appeals state that, ab-
sent the inadmissible confession, there was not sufficient
evidence to support the judgment of the trial judge. The
court does say:

> "It is axiomatic that the constitutional rights
> of a person accused of crime are violated if his
> conviction is based in whole or in part on any
> involuntary confession, regardless of its truth or
> falsity, and even though there is ample evi-
> dence to support the conviction. *Miranda v. Ari-
> zona, supra,* [386 U. S. 436] at page 464 (foot-
> note 33) ; *Jackson v. Denno,* 378 U. S. 368. In
> *Mulligan v. State, supra,* [6 Md. App. 600], we
> flatly held that a statement obtained in viola-
> tion of *Miranda* is *per se* to be excluded from
> evidence and the State not afforded an oppor-
> tunity to show that the admission of the state-
> ment was harmless error." 9 Md. App., at 49.

In the case at bar the trial judge affirmatively stated
that he rejected the inculpatory statement, noting that
"[I] completely disregard said statement and give no
weight to it in reaching a verdict." This is, therefore, not
a case where we are left without knowledge as to whether
the conviction was based, in whole or in part, on a legally
inadmissible confession; Judge Cole stated flatly that he
was not basing his verdict on the statement.

Again, to say that we should be bound, in reaching this
decision, by the same considerations as if the case had
been heard by a jury below, is ignoring the recognition
of the dual capacity with which our procedure has vested
the judge when sitting as a trial court, a practice fol-
lowed in this State for over two hundred years.

The origins of the right of an accused to elect to be tried by the court in this State are somewhat misty; however, in *Rose v. State*, 177 Md. 577, 10 A. 2d 617 (1940), Chief Judge Bond had occasion to trace its history and stated:

> "If any of these clauses might otherwise be read as commanding trials by jury in all criminal cases, it is to be borne in mind that trials without juries have regularly been allowed since near the founding of the province, if not from the beginning, and the clauses were all adopted while the practice was in vogue, and were never regarded as causing any interruption of it. Explanatory theories seem to have varied somewhat. Statutes adopted soon after the settlement provided that a jury trial should be allowed in a case of crime affecting life or member, or in any other case upon security given by the accused to pay the cost of it; and instances of trials without juries appear in some of the records of the Provincial Court and county courts of that century. *Archives of Maryland,* vol. 1, 83 and 151; vol. 4, 165. And so it was during the 18th century, before and after the Revolution.

> \* \* \*

> "To the knowledge of men now living, trials without juries have long been elected in the greater number of criminal cases in the state, and in the criminal courts of Baltimore City, where the number of such cases is naturally greater than in other jurisdictions, more than ninety per cent of all trials have for many years been held without juries.

> \* \* \*

> "It is demonstrated that there is a pronounced desire for it. And for persons who fear the effect of any prejudice in the jury box, racial or other prejudice, it is a boon."

We have laid emphasis on the antiquity as well as the importance of nonjury trials in this State to stress the role which they have served in our system of administration of justice. We believe that to restrict the ambit of control over the conduct of the trial by a judge in a nonjury case, as would most surely result were we to allow the opinion of the Court of Special Appeals to stand, would jeopardize the continued use of trial by the court alone.[1]

Of more importance is the historical fact that, although opinion may have been to the contrary elsewhere,[2] it is clear that we have consistently reposed our confidence in a trial judge's ability to rule on questions of admissibility of evidence and to then assume the role of trier of fact without having carried over to his factual deliberations a prejudice on the matters contained in the evidence which he may have excluded.

Recently, in *State v. Babb,* 258 Md. 547, 267 A. 2d 190 (1970), we had occasion to discuss the impact which a prior conviction of drunkenness in a motor vehicle case (which was a conviction of questionable admissibility)

---

1. There are certainly times when shocking and brutal circumstances surrounding the crime which is the subject of the criminal prosecution suggest to the defense attorney that the accused's interests would be best served by having the case tried by a judge, whose not-infrequent exposure to sordid and sensational matters tend to make him less susceptible to influence by the morbid details than the average juror.

2. It is of interest to note that nonjury trials were not everywhere met with the same acceptance as they enjoyed in Maryland. In an article by James H. Webb in Two Centuries' Growth of American Law, published by Yale University (1901), which article viewed the practice as a radical reform, the following disclaimer may be found at p. 383: "In 1874, the legislature of Connecticut enacted that the accused, when called upon to plead, might elect to be tried by the Court instead of by the jury. In sustaining the constitutionality of this statute, the Supreme Court [of Connecticut] took occasion to severely criticize the provision. 'We cannot believe', says the opinion, 'that it is wise or expedient to place the life or liberty of any person accused of crime, even at his own consent, at the disposal of one man, or any two men, so long as man is a fallible being'." The statute was repealed two years after its enactment.

We would add only that today the right to elect a trial by court on the part of the accused represents the modern trend. 47 Am. Jur.2d, Jury, § 72, p. 689.

might have had upon the trial judge as contrasted to a jury. In *Babb* there was a question, among others, of harmless error and it being a nonjury case we said:

"* * * The assumed proposition that judges are men of discernment, learned and experienced in the law and capable of evaluating the materiality of evidence, lies at the very core of our judicial system. Such an assumption would be completely unwarranted with regard to a jury of laymen and the impact which evidence may have upon their deliberative powers. And, if this case had been tried before a jury, our conclusion may well have been different than that presently reached. * * *."

For the reasons which we have set forth in this opinion we think the Court of Special Appeals was in error when it reversed the judgment of the lower court and remanded the case for a new trial.

> *Order of the Court of Special Appeals reversed, judgment and sentence of the Criminal Court of Baltimore reinstated, the State to pay the costs.*