# STATE OF MARYLAND *v.* ZIMMERMAN a/k/a Samuel Daniels and Samuel Brown

[No. 307, September Term, 1970.]

*Decided February 8, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Robert A. DiCicco, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Edward F. Borgerding, Assistant Attorney General,* on the brief, for appellant.

*William H. Murphy, Jr.,* with whom was *LeRoy W. Carroll* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

We here consider the question of the proper time and place to raise a contention that a defendant in a criminal case did not knowingly waive—or, more properly under Maryland procedure, elect—a jury trial. We shall reverse the order of the Court of Special Appeals which, when the question of the voluntariness of the election was raised for the first time in that court, remanded the case for a determination of that point.

We do not consider whether an accused may elect a court trial, thereby waiving a jury trial. That is established. *Rose v. State,* 177 Md. 577, 10 A. 2d 617 (1940) ; *Singer v. United States,* 380 U. S. 24, 85 S. Ct. 783, 13 L.Ed.2d 630 (1965) ; and *Patton v. United States,* 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854 (1930). Nor do we consider whether such election or waiver should be a knowing election and waiver. That is conceded. What we are concerned with is the *time* and *place* for challeng-

ing the knowingness of such election or waiver when the point was not raised at the original trial.

Sam Zimmerman was convicted in the Criminal Court of Baltimore City of breaking into the "warehouse" of The First Unitarian Church of Baltimore and stealing property of the value of $5.00 and upwards. As Joseph had a coat of many colors, so Zimmerman is a man of many names. He uses variations of the forename "Samuel" such as "Sam" and "Sammy". He apparently prefers to further vary his surname since he is the Samuel Daniels of *Daniels v. Director,* 238 Md. 80, 206 A. 2d 726 (1965), and *Director v. Daniels,* 243 Md. 16, 221 A. 2d 397, *cert. den.* 385 U. S. 940 (1966), and the Samuel Brown of *Brown v. State,* 5 Md. App. 367, 247 A. 2d 745 (1968).

Zimmerman appealed his conviction to the Court of Special Appeals. One of the three questions he there raised was:

> "II. Did the court err in failing to determine whether or not appellant intelligently waived his right to a jury trial?"

At no time did he there or here contend that his election was not knowingly made.[1] Here he has chosen to frame the question as:

> "Whether or not the record at trial revealed that the appellee specifically waived his right to a jury trial?"

The Court of Special Appeals (9 Md. App. 488, 265 A. 2d 764 (1970)) found no merit in any contention other than that relative to waiver. A divided court remanded the case without affirmance or reversal "for the purpose of the introduction of additional evidence, or otherwise, as may be necessary, for a determination by the lower court whether or not appellant knew of his right to a jury trial and intentionally relinquished or abandoned it,

---

1. For purposes of this opinion the words "intelligently" and "knowingly" are regarded as synonymous and interchangeable.

as if no appeal had been taken and the judgment from which the appeal was taken had not been entered." It further directed that "[u]pon such determination the record [should] be returned to [the Court of Special Appeals]."

In this case Zimmerman was initially arraigned on June 10, 1969. When the judge then sitting learned that he did not have counsel, he said:

"We will appoint an attorney for you, Mr. Zimmerman or Mr. Daniels, and he will be in touch with you. In the meantime, we will enter a plea of not guilty and reserve the question of court or jury trial."

Counsel was appointed. Zimmerman was rearraigned on September 3 after having first made various pre-trial motions. In Zimmerman's presence counsel entered a not guilty plea. Counsel then replied, "By the Court." in response to the question of the clerk, "How does he wish to be tried?"

·No less an authority than the late Carroll T. Bond, Chief Judge of this Court from 1924 to 1943 and a judge of this State for almost 32 years, stated that the Maryland practice of trying cases by judges without juries goes back to more than 80 years before the Revolution.[2] See his article entitled "The Maryland Practice of Trying Criminal Cases by Judges Alone, Without Juries" in 11 A.B.A.J. 699 (1925), where he said:

"The present Maryland practice appears to be a development from the ancient English practice of submission to a fine on a charge not capital and punishable by fine, without contesting the charge, the practice which survives in some jurisdictions under the name of *nolo contendere*.

---

2. Judge Bond was also the author of the authoritative work *The Court of Appeals of Maryland, A History* (1928), and with Richard B. Morris of "Proceedings of the Maryland Court of Appeals 1695-1729" appearing in 1 *American Legal Records* (1933), published by the American Historical Association.

The history of it in Maryland cannot be exactly stated without a more extended examination than has yet been made of the records of colonial trial courts. The records of the Baltimore County Court of 1693 and 1694 show trials without juries, at the election of the accused. The usual entry was that John Gamble or George Mattox, or whoever else may have been the defendant, 'Pleaded not guilty and put himself upon the Court.' And the court found him guilty or not guilty. Such proceedings would seem to have been plain non-jury trials. The plea, issue and verdict all appear to have been present. That fact, and the fact that trials without juries were held in criminal cases in seventeenth century Massachusetts (Massachusetts Law Quarterly for August, 1923, pages 7 and 27), suggest the need of an investigation of facts before any statement is made that trial by jury in criminal cases was the only form known to the early American law. It is possible to assume too close an adherence to English practice in the colonies.

\* \* \*

"The form of procedure seems to have been, clearly enough, that of the old English Courts, an instance of which is to be found as far back as a case in the Year Book of 9 Henry VI, 60a, in which, as the Chief Justice there said, the accused *posuit se in gratiam Domini Regis et petit se admittit per finem.*

\* \* \*

"Inasmuch as, in some other jurisdictions, a question has been raised as to the consistency of the allowance of non-jury trial with constitutional requirements of jury trial, it may be well to make note here of the provisions on that subject in the Constitutions of Maryland. Since 1776 the several constitutions of the State have

provided, in the Declarations of Rights, that the people are 'entitled to the common law of England, and the trial by jury, according to the course of that law' (Declaration of Rights, Art. 5) ; 'that in all criminal prosecutions every man hath a right . . . to a speedy trial by an impartial jury without whose unanimous consent he ought not to be found guilty' (Art. 21) ; 'that no man ought to be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property but by the judgment of his peers, or by the law of the land' (Art. 23). Since 1851 the constitutions have contained the further provision (now Art. 15, Sec. 5), that, 'In the trial of all criminal cases, the jury shall be the Judges of Law, as well as of fact.' No question has even been raised in Maryland as to the consistency of allowing trial without a jury when the accused desires it.

"So in this State the practice is one of respectable age, and it seems to Maryland lawyers to be fully as natural a feature of the administration of criminal justice as does the jury trial. They have been quite unaware that there was anything extraordinary in it, and are always surprised when they learn that in other jurisdictions an accused cannot have a trial without a jury if he wishes it."

In *Rose v. State*, 177 Md. 577, 10 A. 2d 617 (1940), our predecessors overruled the claim of the defendant that she had been deprived of her constitutional right of trial by jury. In that case through her attorney she initially elected a jury trial. She withdrew this election at the time of trial and elected to be tried by the court without a jury. Chief Judge Bond there reviewed again the prior practice in Maryland saying:

"[I]t is to be borne in mind that trials without

juries have regularly been allowed since near the founding of the province, if not from the beginning, and the clauses were all adopted while the practice was in vogue, and were never regarded as causing any interruption of it." *Id.* at 580.

He further said:

"The very men who adopted the constitutions, then, or their contemporaries, conceived of the clauses as in harmony with the familiar practice, and we are compelled to take this to be their meaning. [Citing authorities.] There is hardly an institution in the state more firmly established. To the knowledge of men now living, trials without juries have long been elected in the greater number of criminal cases in the state, and in the criminal courts of Baltimore City, where the number of such cases is naturally greater than in other jurisdictions, more than ninety per cent of all trials have for many years been held without juries.

"Strictly speaking, there is in this no waiver of a requirement of jury trial. It is more accurate to say that an equally normal method is elected. And there is no reason for disapproving it as a deprivation of something an accused should have. It is demonstrated that there is a pronounced desire for it. And for persons who fear the effect of any prejudice in the jury box, racial or other prejudice, it is a boon.

"Clearly therefore the appellant suffered no deprivation in being given her election, and there was nothing improper in trying her case as it was tried. Her attorneys object that the recitals in the docket entries do not show that the election was made by the accused in person rather than by attorney, or show other desirable safeguards, but nothing else is required under

the law and regular practice. The recital is that she made the election. But if her attorney made it, that was regular and proper. There is no grievance in any action below in this respect." *Id.* at 581.

See also *State v. Hutchinson,* 260 Md. 227, 271 A. 2d 641 (1970) ; *Journigan v. State,* 223 Md. 405, 409, 164 A. 2d 896 (1960) ; *Byrd v. Warden,* 210 Md. 662, 663, 124 A. 2d 284 (1956) ; and *Grammer v. State,* 203 Md. 200, 213-14, 100 A. 2d 257 (1953).

In this regard it should be noted that there is a difference between the language in the Constitution of the United States relative to jury trial and the various Maryland constitutional provisions. Art. III, § 2 of the Constitution of the United States seems to *mandate* a jury trial since it provides:

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; * * *"

while our constitutional provisions as cited by Judge Bond refer to the *right* of trial by jury. In his *Index of Maryland Statutes and Cases on Criminal Law* (3rd ed. 1937), the late Professor John S. Strahorn, Jr., who then taught criminal law at the University of Maryland School of Law, commented:

"*Right to jury trial and waiver thereof.* * * * An aspect of criminal procedure in which Maryland differs radically from the majority of other states is seen in our rule that the defendant may waive a jury and be tried before a Justice of the Peace or Judge of the Circuit or Criminal Court. Not only may one who has been indicted elect a trial before the Court, but in the case of many crimes it is provided that the Justice of the Peace may ask the accused whether he desires a jury trial and if the accused replies in the negative, the justice may then try him without a jury." *Id.* at 34.

This difference may well account for the reluctance in the federal system and in certain states to permit the accused to have the complete and final say as to whether trial should be by court or jury.

Not only does the Maryland court trial system expedite the trial of criminal cases, but also any experienced lawyer worth his salt in the trial of criminal matters knows that there are many, many instances where trial before the court is in the best interest of the accused. Consequently, such lawyers over the years have in certain instances deliberately recommended to their clients that they have a court trial. See similar comments in *Rose* and *Hutchinson*.

In this case Zimmerman's knowledge of court procedure was constantly displayed. The record shows he had absolutely no hesitancy in making his thoughts and desires known to the trial judge. At one point in the proceedings counsel for Zimmerman addressed the court advising that Zimmerman had "expressed the desire to [him] that he no longer wished to go on with the trial and wanted other defense counsel". Upon questioning by the court, Zimmerman said the reason he was dissatisfied was that he had asked his attorney to do things that he would not do. At this point the record is as follows:

> "THE COURT: So what you are saying is that you are dissatisfied with your counsel because he indicated to you that in his judgment it was not necessary to call the other two police officers who were involved in this arrest, is that correct?
>
> "SAM ZIMMERMAN: That's not the only reason.
>
> "THE COURT: He would have to call them as your witnesses if you want them called. There are some problems attached to that, do you understand that?
>
> "SAM ZIMMERMAN: Yes, I understand that too but these two officers are supposed to have

been the two that arrested me but yet when I come here, you bring somebody else in here.

"THE COURT: The State has a right to bring witnesses that they feel are proper to prove their case. They don't have to produce the witnesses that you want them to produce in order to prove their case.

"SAM ZIMMERMAN: But I don't wish to go to jail for this.

"THE COURT: You have a right to call any witnesses that you want in your defense. If you want to call these witnesses as your witnesses to your defense, I suggest you discuss it with your counsel, but you can't tell the State how to present its case.

"SAM ZIMMERMAN: This is my business. None of you all don't care about me if I go to jail or not.

"THE COURT: Mr. Merker?

"MR. MERKER: Your Honor, may I just get something clear? As I heard it, he said that Officer Reitter was not present at the indictment or at the preliminary hearing. I don't think he said he wasn't present at the time of the arrest, is that it?

"SAM ZIMMERMAN: The two officers said they arrested me —

"THE COURT: I don't think it makes any difference. The State can produce whatever competent witnesses it wishes to testify and the defendant cannot tell them what witnesses to produce. That's your responsibility.

"If the defendant wants certain witnesses summoned to rebut any part of the State's case, I think he has a right to do it after he has reviewed the matter with his counsel."

Continuance was granted for these witnesses to be produced, the record at that point being:

"THE COURT: * * * Let the State conclude its case and if you want to call these police officers as defense witnesses after consulting the defendant, I will certainly give you an opportunity to do so. But, I am not going to permit, if that's the reason for his dissatisfaction, I am not going to dismiss counsel at this time or appoint other counsel but I will order that the trial continue. All right.

"SAM ZIMMERMAN: In other words, you are telling me you don't care what I say or what happens?

"THE COURT: I am telling you you don't have the right after counsel has been appointed, halfway through the trial to say that you are dissatisfied with your counsel particularly for the reasons you outlined.

"What you are telling me is that you want your counsel to bring in certain witnesses and he will.

"SAM ZIMMERMAN: I asked him to look up things for me and he tells me that they don't have no transcript. They go down to the police station and they say anything in the world about me and I don't have nothing to say about it.

"MR. MERKER: He wanted a transcript of what took place at the preliminary hearing and I told him there was none. There is no transcript. No one has it. The State doesn't have it and I don't have it.

"SAM ZIMMERMAN: What about when they say they arrested me at 12:40?

"THE COURT: That's a matter of proof, and we will consider it with the other evidence in the case.

"SAM ZIMMERMAN: Can I have Mr. Paul Smith subpoenaed in here, please?

"THE COURT: You discuss with your coun-

sel what witnesses you want to bring into court
and we will take it up at that time.

"At this time, the State will proceed with its
case."

Pursuant to that request, Paul Smith, the attorney who
represented Zimmerman at the preliminary hearing, was
subpoenaed and testified at the continued hearing. His
testimony was that the evidence at the preliminary hear-
ing was to the effect that the arrest or confrontation of
Zimmerman was made at 12:40 A.M. A police officer de-
sired as a witness by Zimmerman was also brought in.

After the filing of Zimmerman's notice of appeal and
his request to proceed *in forma pauperis*, the Clerk of the
Criminal Court of Baltimore forwarded him a form of
petition for permission to prosecute an appeal as an in-
digent defendant. It is interesting to note that in stat-
ing his opinion of the reasons for appeal Zimmerman
said:

"(1) that I was denied the due process, equal
protection of the law: (2) that there was no
probable cause to make the arrest: (3) that the
evidences that was introduce was the result of
an illegal search and seizure: (4) that there
was insufficient evidences to convict (5) that I
was denied a fair an impartial trial because the
lower court denied me the right the preliminary
hearing of transcript to rebuttal the state wit-
nesses contradiction testimony (6) that I was
tried under a general defective indictment be-
cause the indictment did not bear the name of
the forman of the grand jury but the state at-
torney of Baltimore City."

Not one word was said relative to his election of court
or jury trial.

What we here have involved is not a contention on the
part of Zimmerman that he did not knowingly waive jury
trial or elect a court trial, but a contention that the rec-

ord does not affirmatively show that he knowingly made such waiver or election. The Court of Special Appeals in its opinion spoke of its responsibility "to make an independent examination of the whole record" in an instance "[w]hen constitutional rights turn on the resolution of a factual dispute". In the state of this record we do not perceive a factual dispute. There was before the court an election of a court trial by counsel in the presence of the accused, the exact situation which appeared in *Rose*. There is nothing in this record to show that Zimmerman ever wanted a jury trial. Even now he does not say he desired a jury trial. If he in fact did want a jury trial, it is odd that he did not express himself when the election was made and did not raise this point in his petition for right to appeal as an indigent, although, as the record indicates, he was not bashful in expressing himself in that petition on other points he regarded as worthy, nor was he bashful about disagreeing with his attorney during the trial as to trial procedure. In other words, it can safely be said from the record that he was not one of those persons who is prepared to deliver himself into the hands of a professional person and rely upon that person's professional competence and judgment. The state of this record on the point now at issue serves to point up the wisdom of Maryland Rule 1085 providing that the Court of Special Appeals "will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court * * *". What was here proposed was to send the case back to the trial court for a determination as to whether there was a knowing waiver with the record to then go back once again to the Court of Special Appeals, with the possibility of its coming on to us on *certiorari*. Then, if the conviction were not set aside, there undoubtedly would be a challenge under the Post Conviction Procedure Act, with request for leave to appeal from that determination.

The Maryland version of the Uniform Post Conviction Procedure Act, Code (1967 Repl. Vol.), Art. 27, §§ 645A-645J, was passed with the intent that there be brought

together "into one simple statute all the remedies, beyond those that are incident to the usual procedures of trial and review, which are at present available for challenging the validity of a sentence * * *." *Brady v. State,* 222 Md. 442, 447, 160 A. 2d 912 (1960), and *State v. D'Onofrio,* 221 Md. 20, 29, 155 A. 2d 643 (1959).

The procedure here contemplated by the Court of Special Appeals would have the effect of increasing the number of times the case would be considered and, as a consequence, would extend the time between arrest and an ultimate determination of guilt or innocence. It would postpone the date of any evidentiary hearing on challenges raised under the Post Conviction Procedure Act.

The public and the accused are entitled to speedy administration of justice. Memories fade with the passage of time. Therefore, the quest for truth and justice will best be served by the earliest possible determination of factual questions. For that reason it becomes important that orderly processes for those determinations be established and, once established, that there be adherence to those processes. If Zimmerman honestly believes that he did not knowingly elect a court trial rather than a jury trial, the avenue is open for him through post conviction procedure to air not only that contention but all other contentions relative to any impropriety in the course of that trial. All of this would be in accordance with the established procedures in Maryland and, at the same time, would provide full protection to the rights of Zimmerman.

What we consider to be the desirable procedure was set forth in *Harris v. State,* 2 Md. App. 408, 234 A. 2d 781 (1967). Harris claimed the representation afforded him by his counsel at his trial in the Criminal Court of Baltimore was so inadequate as to violate his constitutional rights. The Court of Special Appeals pointed to Rule 1085 and said:

"The appellant did not raise the question of the incompetency or inadequacy of his counsel be-

fore the lower court and it cannot be raised here for the first time. *Sherrod v. State,* 1 Md. App. 433; *Howard v. State,* 1 Md. App. 379; *Charles v. State,* 1 Md. App. 222. While an accused must be afforded genuine and effective representation going to the fundamental fairness of the trial (*Miller v. State,* 1 Md. App. 653), we find nothing in the provisions of Rule 1085 to justify review by this Court, on the present state of the record, of the allegation that counsel was inadequate or incompetent. Our holding does not preclude the appellant from raising the point in other proceedings available to him. We do not feel that any rights of the appellant are violated by our not now entertaining the point and, on the contrary, think that there is a concept of fundamental fairness thereby preserved. If we were to consider the point now, counsel, whose professional ability and integrity are impugned, would be afforded no opportunity to be heard." *Id.* at 409.

The Maryland practice of permitting appeals, with certain stated exceptions, only with reference to final judgments has contributed to the relatively good condition of our dockets including the fact that when this Court rose at the end of the 1969 term we had heard all cases on the docket for that term ready for argument. The interest of justice is best served if there are not piecemeal appeals. Accordingly, the point not having been raised below, the Court of Special Appeals was in error in remanding this case for a determination as to whether Zimmerman knowingly elected a court trial in lieu of a jury trial, and then directing that upon such determination the matter be returned to that Court.

We hasten to add we regard the preferable practice in accepting an election of trial by the court from an accused is for the trial judge at that time to determine on the record whether this is a knowing election on the part of the accused of a court trial in lieu of a jury trial in

much the same manner as that specified by the Court of Special Appeals for acceptance of a guilty plea.[3] *See Montanye v. State,* 7 Md. App. 627, 630, 256 A. 2d 706 (1969), and *Silverberg v. Warden,* 7 Md. App. 657, 662, 256 A. 2d 821 (1969).

> *Order of the Court of Special Appeals reversed, and judgment and sentence of the Criminal Court of Baltimore reinstated; the State to pay the costs.*

---

3. We take cognizance of the fact that in some parts of the State trial counsel regularly advise their clients as to their recommendations as to election, but leave to the accused the actual stating of that election. Even in those instances the preferable practice—and the practice calculated to reduce litigation—is for the trial judge to then ascertain that the election is knowingly made.