*Lewin Powell III v. State of Maryland*, No. 0721, Sept. Term 2022.  Opinion by Arthur, J.

**UNIFORM POSTCONVICTION PROCEDURE ACT—EXTRAORDINARY CAUSE**

Under section 7-103(b) of the Criminal Procedure Article ("CP") of the Maryland Code (2001, 2018 Repl. Vol.), a petition for post-conviction relief "may not be filed more than ten years after the sentence was imposed" "[u]nless extraordinary cause is shown[.]"  Extraordinary cause is not defined by statute, but it has been interpreted by the Maryland appellate courts to mean cause beyond what is ordinary, usual, or commonplace or beyond what is regular and customary.

In this case, the petitioner's counsel attempted to file his petition on MDEC on the eve of the statutory deadline, but negligently failed to effectuate the filing.  She discovered her error three days later, just after the deadline had expired.  The circuit court dismissed the petition, concluding that the petitioner had not established "extraordinary cause" to excuse the late filing.

The Appellate Court of Maryland vacated the judgment.  The petitioner had a statutory right to the assistance of counsel, which entails a right to the effective assistance of counsel.  In evaluating whether a person has been denied the effective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  In other words, the law views professional competence as both "ordinary, usual or commonplace" and as "regular" and "customary."

In this case, however, counsel committed legal malpractice, which the law deems to be rare, irregular, and unusual and neither regular nor customary.  Consequently, the petitioner demonstrated extraordinary cause to justify the late filing of the post-conviction petition under CP § 7-103.

Circuit Court for Baltimore County
Case No. 03-K-08-002390

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 0721

September Term, 2022

_____

LEWIN CARLTON POWELL, III

v.

STATE OF MARYLAND

_____

Arthur,
Ripken,
Wilner, Alan M.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Arthur, J.

_____

Filed: July 26, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

* At the November 8, 2022, general election, the voters of Maryland ratified a
constitutional amendment changing the name of the Court of Special Appeals of
Maryland to the Appellate Court of Maryland. The name change took effect on
December 14, 2022.

Under section 7-103(b) of the Criminal Procedure Article ("CP") of the Maryland Code (2001, 2018 Repl. Vol.), a petition for post-conviction relief "may not be filed more than 10 years after the sentence was imposed" "[u]nless extraordinary cause is shown[.]"

In this case, the petitioner's post-conviction counsel attempted to file a petition for post-conviction relief on the eve of the statutory deadline, but negligently failed to ensure that the petition had been accepted for filing in the new MDEC system. When she discovered her error, two days after the deadline had run, she belatedly filed the petition.

The Circuit Court for Baltimore County dismissed the petition, finding no "extraordinary cause" to excuse the late filing. We vacate and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2009, at the age of 17, appellant Lewin Carlton Powell III entered a guilty plea to one count of first-degree murder. On April 3, 2009, he was sentenced to life imprisonment.

In August 2018, approximately six months before the 10-year deadline for filing a post-conviction petition, Powell obtained post-conviction counsel. Counsel met with Powell on multiple occasions and told him that she would represent him in filing and litigating his post-conviction petition. Counsel knew that the 10-year deadline would run on April 3, 2019, and she intended to file a timely post-conviction petition on Powell's behalf. According to counsel, Powell "had no reason to think he would need to file a petition on his own behalf."

On April 2, 2019, the last day before the 10-year deadline would run, post-conviction counsel attempted to file Powell's post-conviction petition, using MDEC, the

court's new electronic filing system.[1]  On April 5, 2019, counsel checked MDEC, because she realized that she had not received confirmation of the filing.  She discovered that she had not succeeded in filing the petition.  She explained that she "must have failed to hit submit—or failed to do something else MDEC requires—because it did not get filed that day."  She immediately filed the petition without any substantive changes.  The petition was late by two days.

Counsel continued to work on Powell's case in the hope that the State would consent to an adjudication on the merits despite the late filing.  On September 20, 2019, however, an Assistant State's Attorney informed counsel that "he would not be able to waive" the State's objection.

On July 12, 2021, Powell, through new counsel, filed an amended petition for post-conviction relief.  In that petition, Powell argued he could demonstrate extraordinary cause, which would excuse the late filing of his original petition.

On September 10, 2021, the circuit court held a hearing on Powell's amended petition.  In brief, Powell argued that he had a statutory right to the effective assistance of counsel in filing his post-conviction petition, that counsel's error had deprived him of that right, and that the deprivation amounted to extraordinary cause.  The State countered that "failing to me[et] the deadline through ordinary course" did not qualify as extraordinary cause under CP section 7-103(b).

---

[1] Baltimore County began using MDEC on February 22, 2019.
https://www.mdcourts.gov/media/news/2019/pr20190222.

2

The court agreed with Powell that the late filing occurred because of the attorney's error, but disagreed that the error rose to the level of extraordinary cause to excuse the late filing.

Powell filed an application for leave to appeal, which we granted.

## QUESTION PRESENTED

On appeal, Powell presents one question, which we have rephrased: Did the court err in ruling that post-conviction counsel's negligent failure to file a timely post-conviction petition did not qualify as "extraordinary cause" under CP section 7-103(b)?[2]

For the reasons set forth below, we hold the court erred in dismissing Powell's post-conviction petition as untimely, because the ineffective assistance of his post-conviction counsel qualified as extraordinary cause.

## DISCUSSION

Under the Maryland Uniform Postconviction Procedure Act ("UPPA"), CP §§ 7-101 to -301, a person who has been convicted of a crime and is either confined or on parole or probation may commence a post-conviction proceeding to challenge the validity of a conviction.

---

[2] Powell phrased the question as follows:

Did the post-conviction court err in ruling that post-conviction counsel's failure to timely file Appellant's Petition for Post-conviction Relief, which denied Appellant his right to the effective assistance of counsel in post-conviction proceedings, did not constitute "extraordinary cause" to excuse the untimely filing under Criminal Procedure Article, Section 7-103?

Before 1995, the UPPA permitted the filing of a post-conviction proceeding "at any time." Since October 1, 1995, however, the UPPA has stated that, "[u]nless extraordinary cause is shown," a petition for post-conviction relief "may not be filed more than 10 years after the sentence was imposed." CP § 7-103(b).

This case turns on the meaning of "extraordinary cause," a term that is not defined in the UPPA. "'When we are called upon to interpret any statute, we first examine the ordinary meaning of the enacted language, reading the statute as a whole to avoid an interpretation that might nullify another part of the statute.'" *Martinez v. Ross*, 245 Md. App. 581, 590 (2020) (quoting *Richard Beavers Constr., Inc. v. Wagstaff*, 236 Md. App. 1, 14 (2018)); *accord Gateway Terry, LLC v. Prince George's County*, 253 Md. App. 457, 467 (2022). "[T]o understand the meaning of statutory language, we must look beyond individual words and clauses to the larger context, including other surrounding provisions and the apparent purpose of the enactment." *Trim v. YMCA of Cent. Maryland, Inc.*, 233 Md. App. 326, 334-35 (2017); *accord Martinez v. Ross*, 245 Md. App. at 591.

The UPPA, in which the term "extraordinary cause" appears, was designed "to streamline 'into one simple statute all the remedies, beyond those that are incident to the usual procedures of trial and review, which are . . . present[ly] available for challenging the validity of a sentence.'" *Douglas v. State*, 423 Md. 156, 175 (2011) (quoting *State v. Zimmerman,* 261 Md. 11, 24 (1971)) (further citation omitted). Thus, the UPPA has the attributes of a remedial statute, which should be construed liberally in favor of claimants.

4

*See Kranz v. State*, 459 Md. 456, 470 (2018) (citing *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 495 (2007)).

The parties agree that the meaning of "extraordinary cause" is a question of law for a court to decide. So do we. *See*, *e.g.*, *Baltimore County v. Ulrich*, 244 Md. App. 410, 425 (2020); *Richard Beavers Constr., Inc. v. Wagstaff*, 236 Md. App. at 13. Consequently, we review the circuit court's interpretation of the term without deference.

A number of reported decisions have interpreted the term "extraordinary cause" in other contexts. We begin with a review of those decisions to see what light, if any, they shed on the meaning of "extraordinary cause" in CP section 7-103.

In *State v. Hicks*, 285 Md. 310 (1979), the Court considered the meaning of "extraordinary cause" in former Rule 746, which required a criminal trial to begin within 120 days of the appearance or waiver of counsel or the appearance of defendant, but permitted the administrative judge or a designee to change the trial date "for extraordinary cause shown."[3] The rule implemented a statutory directive, which required that a criminal trial begin "not later than six months" from the arraignment or the appearance or the appointment of counsel for the accused, "whichever occurs first," and prohibited postponements "except for extraordinary cause shown." Md. Code (1971), art.

---

[3] The current version of the rule generally requires the trial to begin within 180 days of the triggering events and permits the administrative judge or a designee to change the trial date "for good cause," rather than "extraordinary cause." Md. Rule 4-271(a).

27, § 591.[4]  The Court viewed the statute as "a declaration of legislative policy designed to obtain prompt disposition of criminal charges" and as a manifestation of the "legislature's recognition of the detrimental effects to our criminal justice system which result from excessive delay in scheduling criminal cases for trial and in postponing scheduled trials for inadequate reasons."  *State v. Hicks*, 285 Md. at 316.

On the merits, the Court explained that "[d]etermining what constitutes 'extraordinary cause' under Rule 746" depended upon "the facts and circumstances of each case."  *State v. Hicks*, 285 Md. at 319.  In the Court's view, however, "extraordinary cause" "[c]learly" meant "cause beyond what is ordinary, usual or commonplace" or cause that "exceeds the common order or rule and is not regular or of the customary kind."  *Id.*

In *Hicks*, the defendant was incarcerated in Delaware on the scheduled date of the trial, which was shortly before the end of the 120-day period.  *Id.* at 313.  The defendant had not consented to return to Maryland for his trial, but he would be released and could be taken into custody in a month.  *Id.* at 314.  Because the defendant could not be tried *in absentia*, the circuit court postponed his case.  *Id.*  As soon as the 120 days had passed, however, the defendant moved to dismiss the charges.  *Id.*  The circuit court granted the motion, finding that the State had not demonstrated "extraordinary cause" to postpone the trial date beyond the 120-day deadline.  *Id.* at 315.

---

[4] The current version of the statute requires that a criminal trial begin no more than 180 days after the appearance of counsel or the first appearance of the defendant before the circuit court, whichever comes first.  CP § 6-103(a).  In addition, the current statute permits postponements "for good cause shown."  CP § 6-103(b)(1).

On appeal, the Court reversed. It reasoned that, under the common law (as preserved by Article 5 of the Maryland Declaration of Rights), a criminal defendant has the right to be present at every stage of the trial. *Id.* at 319 (citing *Bunch v. State*, 281 Md. 680, 683-84 (1978)). "Thus," the Court held, "where the defendant does not appear for trial, through no fault of his own or of the State, 'extraordinary cause' for a postponement would plainly appear to exist." *Id.* The Court was undisturbed that the State had not invoked the Interstate Agreement on Detainers[5] to obtain the defendant's presence on the original trial date, as it was entitled to do. *Id.* at 319-20. Because the defendant did not invoke the agreement "and was not present in court, but was to be returned by Delaware authorities to Maryland the month following the scheduled" trial date, the Court reiterated that "extraordinary cause justifying a postponement was plainly shown to exist." *Id.* at 321.

In *In Re Ryan S.*, 369 Md. 26, 42-43 (2002), the Court used *Hicks*'s definition of "extraordinary cause" in interpreting former Rule 11-114(b)(2), which is now Rule 11-422(b)(6). Under that rule, a juvenile court may extend the time for an adjudicatory hearing only "for extraordinary cause shown." In *Ryan S.* the Court held that, "[w]ithout a more compelling reason, overcrowded dockets do not constitute, and never have constituted, 'extraordinary cause.'" *Id.* at 44. The Court ordered that the juvenile

---

[5] Maryland Code (1999, 2017 Repl. Vol.), §§ 8-401 to -417 of the Correctional Services Article.

7

proceeding be dismissed in part because of the lower court's failure to establish any cause

other than crowded dockets for the considerable delay in adjudicating the case. *Id.* at 46.

In *Ray v. State*, 410 Md. 384 (2009), the Court considered the meaning of

"extraordinary cause" in CP section 3-107, which concerns the State's ability to continue

to pursue charges against a criminal defendant who has been found incompetent to stand

trial and is confined in a State mental hospital, but has not been restored to competency

despite years of effort. In the case of a defendant who has been charged with a felony or

"crime of violence,"[6] for example, CP section 3-107(a)(1) requires the court to dismiss

the charges within no more than five years, "unless the State petitions the court for

extraordinary cause to extend the time[.]"

In ascertaining the meaning of "extraordinary cause" in CP section 3-107, the

Court reiterated the assertion in *Hicks* that "extraordinary cause" means "'cause beyond

which is ordinary, usual or common place [sic]'" or cause that "'exceeds the common

order or rule and is not regular or of the customary kind.'" *Ray v. State*, 410 Md. at 406

(quoting *State v. Hicks*, 285 Md. at 319). Citing *Merriam-Webster's Collegiate*

*Dictionary* 444 (11th ed. 2003), the Court added that "[t]hemes of rarity, irregularity and

unusualness also pervade the definition of extraordinary." *Ray v. State*, 410 Md. at 406.

The Court saw no dispute as to the definition of "extraordinary cause," but said that the

---

[6] At the time of the *Ray* decision, the term "crime of violence" was defined in Maryland Code (2002, 2007 Supp.), § 14-401 of the Criminal Law Article. The definition is currently found in Maryland Code (2002, 2021 Repl. Vol.), § 14-401 of the Criminal Law Article.

8

"dilemma" lay in what "functionally" constitutes "extraordinary cause" in a particular case. *See id.*

In *Ray* the circuit court had found "extraordinary cause" not to dismiss the charges because of the seriousness of the offenses, Ray's dangerousness, and his potential restorability. *See id.* at 388; *id.* at 419. The Court rejected the circuit court's conclusion.

The Court observed that section 3-107 had been enacted against the backdrop of *Jackson v. Indiana*, 406 U.S. 715 (1972), which held that it was a violation of due process and equal protection for a state to indefinitely detain a person who had been judged incompetent to stand trial. *Id.* at 737-38. Under *Jackson v. Indiana*, the Maryland Court said, the "mere pendency of criminal charges" did not justify foregoing the procedural protections that a state must employ in order to civilly commit and continue to detain persons who are alleged to be mentally ill and dangerous to others. *See Ray v. State*, 410 Md. at 414.

In view of the constitutional implications of indefinitely detaining a person who had not been convicted of a crime and did not have the procedural protections of someone who had been civilly committed to a mental institution, the Court concluded that "extraordinary cause," within the meaning of section 3-107, "must require more than dangerousness and restorability, in order to avoid the necessity of civil commitment that requires greater procedural protections." *Id*. at 419. The Court explained:

> Dangerousness, the norm for defendants institutionalized at [a State mental hospital], cannot be viewed as extraordinary, especially because it is but one factor for civil commitment. Restorability to competency, similarly, cannot constitute "extraordinary cause," especially when restorability, a

9

> desirable characteristic, could result in indefinite institutionalization, without procedural protection.

*Id*. at 419-20 (footnote omitted).

From these cases, we discern that "extraordinary cause" does not have a single, fixed meaning, but that its meaning depends on the context in which it is used. In *Ray*, for example, its meaning was informed by the constitutional implications of indefinitely detaining persons who had not been convicted of a crime and had not been afforded the procedural protections of involuntary civil commitment, while in *Hicks* its meaning was informed by the statutory policy favoring the prompt disposition of criminal cases. In any applicable context, however, "extraordinary cause" generally means "cause beyond what is ordinary, usual or commonplace" or cause that "exceeds the common order or rule and is not regular or of the customary kind." *Ray v. State*, 410 Md. at 406; *State v. Hicks*, 285 Md. at 319. Similarly, "extraordinary cause" has connotations of rarity, irregularity, and unusualness. *Ray v. State*, 410 Md. at 406.[7]

---

[7] The State cites *Ray*, 410 Md. at 407, for the proposition that a finding of extraordinary cause "was intended to be limited to the rarest of circumstances." The State omits the balance of the *Ray* Court's statement, which concerned the legislative history of CP section 3-107, a statute in which the exception for "extraordinary cause" must be exceedingly narrow in order to protect fundamental liberty interests of persons who have not been convicted of any crime, but are being held against their will because they are incompetent to stand trial. Here is the full quotation from *Ray*: "A review of the legislative history of Section 3-107 of the Criminal Procedure Article elucidates that such a finding was intended to be limited to only the rarest of circumstances and that neither the seriousness of the charge nor the dangerousness or restorability of the individual is solely determinative." *Ray v. State*, 410 Md. at 407. The *Ray* Court's comments were obviously confined to CP section 3-107.

10

In our judgment, Powell established "extraordinary cause" to justify the late filing of his post-conviction petition under CP section 7-103, because his lawyer committed legal malpractice, which the law deems to be rare, irregular, and unusual, "beyond what is ordinary, usual or commonplace" and neither "regular" nor "customary."

Under CP section 7-108(a), Powell had a statutory right to the assistance of counsel in connection with his petition for post-conviction relief.[8] *Accord Harris v. State*, 160 Md. App. 78, 97 (2004); *Stovall v. State*, 144 Md. App. 711, 721 (2002). "Regardless of the source, the right to counsel means the right to the effective assistance of counsel." *State v. Flansburg*, 345 Md. 694, 703 (1997); *accord Stovall v. State*, 144

---

[8] Section 7-108 provides as follows:

(a) Except as provided in subsection (b) of this section, a person is entitled to assistance of counsel and a hearing on a petition filed under this title.

(b)(1) If a person seeks to reopen a postconviction proceeding under § 7-104 of this subtitle, the court shall determine whether assistance from counsel or a hearing should be granted.

(2) If an appeal has been taken from the judgment of conviction to the Court of Special Appeals, until the judgment of conviction becomes final in the Court of Special Appeals, the court need not:

(i) appoint counsel;

(ii) hold a hearing; or

(iii) act on the petition.

The exceptions in subsection (b) do not apply in this case, because Powell was not seeking to reopen a post-conviction proceeding, and he had no pending appeal.

Md. App. at 721. Thus, Powell's statutory right to the assistance of counsel entails the right to the effective assistance of counsel. *Harris v. State*, 160 Md. App. at 98; *Stovall v. State*, 144 Md. App. at 721; *see also State v. Flansburg*, 345 Md. at 703 (holding that a criminal defendant had a statutory and rule-based right to counsel, and to the effective assistance of counsel, in filing a timely motion to modify a sentence that had been reimposed after a violation of probation).

In evaluating whether a person has been denied the effective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "Until a petitioner proves otherwise, the court presumes counsel's representation was professionally competent[.]" *Harris v. State*, 160 Md. App. at 99; *accord Barber v. State*, 231 Md. App. 490, 515 (2017). In other words, the applicable law views professional competence as both "ordinary, usual or commonplace" and as "regular" and "customary." Conversely, the law views professional incompetence as rare, irregular, and unusual.

In failing to protect Powell's rights by filing a timely post-conviction petition before the well-known statutory deadline, his counsel committed legal malpractice. *See Central Cab Co. v. Clarke*, 259 Md. 542, 551 (1970) (holding that, even without expert testimony, a jury could find that an attorney committed malpractice by failing to file a timely answer and allowing the entry of a default judgment against the client). In missing that deadline, counsel failed to adhere to "prevailing professional norms." *Strickland v. Washington*, 466 U.S. at 688. "[N]o competent attorney would have made" such an

12

error.  *State v. Borchardt*, 367 Md. 586, 623 (2007).  Powell, therefore, has rebutted the presumption of professional competence.

The State does not dispute that Powell's counsel committed legal malpractice or that her performance was not professionally competent.  Instead, the State characterizes her negligence as "a mere filing mistake."

We are unpersuaded by the State's attempt to minimize counsel's error.  Unless counsel's failure to file a timely petition is deemed to constitute "extraordinary cause," Powell will be forever barred from challenging a potentially illegal conviction even though "he had no reason to think he would need to file a petition" and every reason to rely on his counsel to file one.  Powell will not even have the statutory right to attempt to reopen a post-conviction case (*see* CP § 7-104), because no post-conviction case was ever opened in the first place.  Consequently, the "mere filing mistake" resulted in an immense amount of prejudice to Powell.  By contrast, if Powell were allowed to proceed with his petition despite counsel's unprofessional error, the prejudice, if any, to the State would be minimal, because counsel filed the petition a mere two days after the deadline had run.  In these circumstances, we hold that Powell established "extraordinary cause" to excuse the late filing of his petition.

Our conclusion is fortified by the many decisions in which the Maryland appellate courts have given a post-conviction petitioner a belated remedy under the UPPA when counsel has failed to protect the petitioner's rights.  For example, when defense counsel frustrates a defendant's right to an appeal by failing to comply with a prompt and diligent request to note an appeal, the UPPA grants the defendant a belated appeal.  *Garrison v.*

13

*State*, 350 Md. 128, 142-43 (1998).  Similarly, when defense counsel fails to file a timely appeal through no fault of the defendant, the UPPA also grants the defendant a belated appeal.  *Id.*  And when a post-conviction petitioner loses the right to have a sentence reconsidered because counsel failed to abide by a request to move for reconsideration, the UPPA affords the remedy of "permission to file a belated motion for reconsideration of sentence."  *State v. Flansburg*, 345 Md. at 705; *see Matthews v. State*, 161 Md. App. 248, 252 (2005); *Stovall v. State*, 144 Md. App. at 728-29.  In none of those circumstances must the petitioner prove prejudice as a result of counsel's neglect; instead, counsel's failure to protect the petitioner's rights is deemed to be prejudicial because it resulted in the loss of those rights.  *See, e.g.*, *Matthews v. State*, 161 Md. App. at 252.

It would be incongruous for the UPPA to afford a remedy when counsel negligently failed to note a timely appeal or negligently failed to file a timely motion to reconsider or modify a sentence, but not to afford a remedy when counsel negligently failed to file a timely post-conviction petition.  The only possible justification for this incongruity is that, when counsel negligently fails to file a timely post-conviction petition, counsel has eliminated the possibility of any remedy at all under the UPPA.  We reject that justification because we find it untenable.  We hold that, when counsel negligently fails to file a timely post-conviction petition, as Powell's counsel did in this case, the petitioner has a remedy under the UPPA: the right to have the late filing excused under CP section 7-103(b) because of "extraordinary cause."

**JUDGMENT FOR THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED; CASE REMANDED FOR FURTHER**

14

**PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY BALTIMORE COUNTY.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0721s22cn1.pdf

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0721s22cn2.pdf