## BOWIE *v.* STATE

[No. 313, September Term, 1963.]

 

*Decided May 6, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*J. Richard Wilkins* for appellant.

*John W. Sause, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell* and *William T. S. Bricker, State's Attorney and Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant, Bowie, a negro man, was convicted in 1945 by Judge Moser, sitting in the Criminal Court of Baltimore without a jury, of sexual assault on a negro woman, and sentenced to life imprisonment. There was no appeal. In 1945 Bowie unsuccessfully sought habeas corpus from a Maryland judge on the grounds that he had been illegally arrested and that evidence had been erroneously admitted against him at his trial. Leave to appeal was denied in *Bowie v. Warden,* 190 Md. 728, this Court saying on the latter point that "[p]rocedural details (not fundamental), including rulings on evidence, cannot be reviewed on habeas corpus."

In 1952 Bowie again tried, without success, to obtain relief by way of habeas corpus, this time on the claim of double jeopardy and of invalidity of one count of the indictment. In *Bowie*

*v. Warden,* 201 Md. 648, Judge Markell, for the Court, in denying leave to appeal, said "defects in an indictment and the defense of double jeopardy, if properly objected to at the trial, may be reviewed on appeal or on motion for a new trial, and not on *habeas corpus."*

In 1961 Bowie filed a petition under the Post Conviction Procedure Act, claiming that he had been acquitted of rape, charged by the first count of the indictment against him, that he was convicted of assault with intent to rape under the second count of the indictment, but that the second count did not charge assault with intent to rape but, like the first count, charged rape. From these premises he argued that conviction on the second count put him in double jeopardy since he was acquitted on the first count. He claimed also that there was an inconsistency in the verdicts in that he was acquitted of rape under the first count and convicted of rape under the second count, and finally that if he was convicted of assault with intent to rape the conviction was illegal and unconstitutional since he was not charged in the indictment with that crime. Judge Manley found against him.

In granting leave to appeal and remanding the case for further consideration, Judge Henderson, for the Court said (p. 608 of 230 Md.) :

> "Yet the docket entries show that he was convicted of assault with intent to rape, and the second count was at least ambiguous in form. Under the circumstances we are constrained to remand the case for further consideration of that point by Judge Manley, without affirmance or reversal. We intimate no opinion as to whether the point was finally litigated in *Bowie v. Warden, supra* [201 Md. 648], or whether a defect in the indictment could be reviewed in this proceeding."

On remand, after a further hearing at which Bowie was represented by counsel appointed by the court, and consideration of argument of counsel, Judge Manley (1) found that the second count of the indictment charged rape, (2) ordered the clerk to strike from the docket the words between the paren-

theses in an entry made at the trial in 1945, reading "Verdict of Guilty, 2nd, 3rd and 4th counts (Assault to Rape, etc.). Not Guilty 1st Count," and (3) said the evidence would have supported a verdict of guilty of either rape or intent to rape and that the statutes authorized the same penalty for both offenses. He held that the point of double jeopardy, having been finally litigated in the second habeas corpus case, could not be again raised, that it does not follow that a conviction on one count may not stand because of an inconsistent acquittal on another count, and that the contention that the second count was illegal and defective should have been made in the trial court and was not open for review under the Post Conviction Procedure Act. We granted leave to appeal.

A review of the facts is essential for a full understanding and correct decision of the case.

Bowie was charged by the Grand Jury in 1945 in the assault case in a four-count indictment.[1] The first count charged rape, the third count charged perverted sexual practice, and the fourth common assault. The second count, which in Baltimore in such cases has long been, and in 1945 was, by almost unvarying custom, if not unvarying custom, a count charging assault with intent to rape, read as follows in this case:

> "And the Jurors aforesaid, upon their oath aforesaid, do further present that the said FRANK BOWIE, on the said day, in the said year, at the City aforesaid, in and upon one Nettie Graham, feloniously did make and assault with intent then and there, her, the said Nettie Graham, then and there violently and against her will, feloniously did ravish and carnally know, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State."

No challenge was made to the indictment and no question raised as to its meaning until 1961, some fifteen years after

---

1. Bowie was also charged by a separate indictment with robbery of the woman he assaulted, and found guilty.

590

the Grand Jury returned it and the accused pleaded not guilty of the offenses charged in it, and thereafter was found guilty.

At the trial the prosecuting witness testified that as she was on her way home from work late at night, Bowie, at a lonely spot, struck her on the head from behind with a piece of iron pipe, raped her and committed perverted sexual acts upon her, and then robbed her. Almost immediate complaint was made to the police, who arrested Bowie several days later. The prosecuting witness picked him from a line-up of a number of men, and had no doubt of his identity at the trial. The physical evidence found by the police at the lonely place at which the victim told them the acts occurred supported her story. It was shown that Bowie had caused to be pawned a watch taken from the victim and received the proceeds. He confessed to the police that he had hit the woman with the iron pipe and robbed her but denied the sexual acts. On the stand he said he made the confession as to the assault and robbery to exonerate his friend who had pawned the watch for him because he was sure he, Bowie, could "beat the rap" on the sexual charges.

At the conclusion of the testimony, Judge Moser found a general verdict of guilty and deferred sentence. He said to Bowie's counsel, a very experienced and very competent lawyer, who had been appointed by the court, that he had "done a magnificent lawyer-like job with very, very little material * * *. I think you should file a motion for a new trial * * * because I view this case quite seriously * * *. I will order the State to pay for the record if you desire." In criminal cases in Baltimore motions for a new trial are heard by the judges of the Supreme Bench other than the judge who sat in the case and the matter of the legality or adequacy of the indictment, as well as that of the verdict and the sentence, could have been raised and decided at that hearing.

A motion for a new trial was filed, as suggested. Several weeks thereafter, Judge Moser reopened the case, saying:

> "This case was reopened on the instructions of the Court because certain representations were made to me by counsel for the defendant, and I felt those rep-

resentations * * * might or might not affect the judgment of the Court, but in any event in a case as serious as this I wanted the defendant to have every possible leeway to put anything that would in any way affect his guilt or innocence or the degree of his guilt into the record. * * *"

Judge Moser then, within the period during which he had the right to do so and at the express request of the accused and with the express consent of the State, in open court, struck out the verdict of guilty. Bowie's lawyer then produced testimony by a police officer to the effect that at the time of the complaint to the police by the victim, she had once said that Bowie had committed the perverted sexual acts and robbed her but that although she knew he had prepared to rape her and given indications he was going to do so, she was not sure he had done so. In questioning the policeman who was somewhat hazy in certain recollections on the point, Judge Moser made it clear that he had made up his mind, after the original finding of guilt of rape, to impose the death penalty.[2] He said: "You see, this man's life is at stake on this particular point, and I want to go into it as meticulously as I can. Counsel understood if this case had gone to the Supreme Bench and [been] sent back * * * what I was going to do on the evidence before me."

At the conclusion of the testimony at the rehearing, Judge Moser requested argument of counsel "from the standpoint of the kind of verdict possible in view of what has just occurred," and at its conclusion announced his findings as "guilty on the second, third and fourth counts, not guilty on the first," and Bowie's counsel said: "I formally withdraw the motion [for a new trial]." Judge Moser then said to Bowie:

"If it had not been for the developments this morning, I was prepared to sentence you to be hung. In view of the developments this morning * * *, the

2. Code (1957), Art. 27, Sec. 12, authorizes the death penalty as well as life imprisonment for assault with intent to rape, as does Sec. 461 of Art. 27 for rape itself.

sentence of the Court is that you be confined in the Maryland Penitentiary during the course of your natural life."

In arguing that the first and second counts of the indictment charged the same identical crime, Bowie says in his brief:

"It is quite evident notwithstanding the recent order of Court striking out the words 'Assault to Rape, etc.' every person in the court, at the trial in an official capacity viz. the Honorable Judge, the State's Attorneys, the attorney for the accused and the Court Clerks thought that count two of the indictment in question was in the usual form, that it charged assault with intent to rape and that each thought the effect of the verdict was to find the defendant guilty of such charge."

We think that the cumulative effect of the matters set forth below can leave no real doubt that the appellant's conclusions, quoted above, are accurate and correct: (a) Judge Moser's unquestionable intention, after he had been originally persuaded beyond a reasonable doubt that Bowie was guilty of rape, to impose the death penalty; (b) his meticulous inquiry on rehearing into the possibility, at least, that the victim had been unsure at the time that rape had been actually consummated; (c) that customarily in Baltimore the second count of an indictment, such as that on which Bowie was charged, almost always was a count charging intent to rape; (d) Judge Moser's imposition of the penalty of life imprisonment rather than death after hearing the new evidence; and (e) the docket entry of the clerk that the conviction under the second count was for "assault to rape." We are satisfied also that in all probability Bowie's lawyer and Bowie knew full well that the conviction was for assault with intent to rape for which the sentence to be imposed by Judge Moser would be no more than life imprisonment and, being then highly satisfied, freely and voluntarily made "an intentional relinquishment or abandonment of a known right or privilege" (the classic definition of waiver enunciated in *Johnson v. Zerbst*, 304 U. S. 458, 464, 82 L. Ed.

1461, and said in *Fay v. Noia,* 372 U. S. 391, 438-439, 9 L. Ed. 2d 837, to be the "controlling standard" by which a "federal habeas judge" may determine in his discretion whether to deny relief to an applicant "who has deliberately by-passed the orderly procedures of the state court and in so doing has forfeited his state court remedies"), that is, he waived first, the right, at State expense, of seeking a new trial before the judges of the Supreme Bench of Baltimore, who could have acted on a complaint of a faulty indictment or verdict and, later, an appeal to this Court. *Cf. Kellum v. State,* 223 Md. 80, where we noted that no point had been made of the charge being treated as simple assault, although the indictment charged assault with intent, and observed that attack on the indictment appeared to have been waived (footnote 1, pp. 82-83), and *cf.* Md. Rule 725 b.

We turn to the grounds for relief relied on by the appellant. There is no merit to the claim of double jeopardy. Judge Moser found that Bowie had assaulted the named victim with intent to rape her, had committed perverted sexual acts upon her, had assaulted her but had not raped her, all on a day and at a place specified and proven. The accused was in jeopardy but once for any one crime and could not and cannot be again tried for any of the offenses charged in the indictment.

There was no inconsistency in the verdict since the acquittal on the charge of rape and the conviction on the charge of assault with intent to rape were completely compatible both factually and legally.

There remains only the need to consider whether Bowie's conviction of assault with intent to rape under the second count of the indictment and his detention under sentence for that offense, authorized by statute, violates or affronts any fundamental or constitutional right or privilege.

The attack now being made under the Post Conviction Procedure Act on the judgment and sentence is a collateral attack, as an attack on habeas corpus would be, and the same principles apply as in habeas corpus. *State v. D'Onofrio,* 221 Md. 20; *Torres v. Warden,* 227 Md. 649. The rule of the Supreme Court, as we understand it, notwithstanding a broadly liberal application of it, remains that "[s]tate prisoners are entitled

to relief upon federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Townsend v. Sain,* 372 U. S. 293, 312, 9 L. Ed. 770, 785. "It is of the historical essence of habeas corpus that it lies to test proceedings so fundamentally lawless that imprisonment pursuant to them is not merely erroneous but void. Hence, the familiar principle that res judicata is inapplicable in habeas proceedings * * * is really but an instance of the larger principle that void judgments may be collaterally impeached." *Fay v. Noia,* 372 U. S. 391, 423, 9 L. Ed. 2d 837, 859-860.

In *Loughran v. Warden,* 192 Md. 719, the petitioner for the writ of habeas corpus, who was under sentence for conviction of larceny after trust, urged that the act was not a crime but a civil default, that the statute under which he was convicted was unconstitutional and void and too vague to define a crime and, consequently, the indictment, trial and sentence were all a nullity. This Court held that habeas corpus cannot serve the purpose of a demurrer to the indictment and that, except in those exceptional cases where fundamental rights have been violated, the judgment of a court of competent jurisdiction, which is not a nullity, will not be disturbed on habeas corpus where there was or is a right of direct review. *Superintendent v. Calman,* 203 Md. 414, held that a judgment of a superior court of general jurisdiction which has power to decide all questions involved in a case before it, including constitutional questions and questions as to its own jurisdiction, is not a nullity, as well as that in Maryland habeas corpus is not a proper remedy when a remedy by direct review is or was available, and the judgment is not a nullity. Chief Judge Sobeloff, for the Court, referred to the article of Judge Markell in 101 Pa. L. Rev. at page 1154 on the proper scope and function of the writ of habeas corpus in Maryland when resorted to by sentenced prisoners who complain of irregularities in the trial, or invalidity of the indictment, or the unconstitutionality of the statute upon which the indictment was based, and noted that reviews of convictions are limited to exceptional cases in which the proceedings were a nullity or the judgment void, and the violated rights can be preserved only by recourse to habeas

corpus. Illustrations given of violations of fundamental rights which have entered the trial proceedings to a degree that caused the court to lack or lose jurisdiction included denial of counsel, prevention of appeal by officials, obtention of guilty pleas, waiver of counsel or jury trial where coerced, and conviction resulting from the State's knowing use of perjured testimony.

Maryland has held consistently that a defective or inartificial indictment, at least if it charges an offense, cannot be tested or reviewed on habeas corpus or post conviction, although it might have been vulnerable to direct timely attack. *Superintendent v. Calman, supra; Medley v. Warden,* 214 Md. 625, 626; *Wain v. Warden,* 215 Md. 650, 652; *Parker v. Warden,* 215 Md. 661; *Plump v. Warden,* 216 Md. 650; *Wilson v. Warden,* 222 Md. 580, 582, *cert. den.* 364 U. S. 841. This is the general rule. 39 C. J. S. *Habeas Corpus* Sec. 20; *Mahar v. Lainson* (Iowa), 72 N. W. 2d 516, *cert. den.* 350 U. S. 972, *reh. den.* 350 U. S. 1009.

In *Ex Parte Coy,* 127 U. S. 731, 32 L. Ed. 274, the Court held that in a habeas corpus case charging that the indictment was defective or illegal the inquiry is not whether there is in the indictment such specific allegations of the details of the charge as would make it good on demurrer, but whether the indictment describes a class of offenses of which the court has jurisdiction and alleges the defendant to be guilty. If it does, the convicted one should not be discharged on that claim of illegality.

The case of *In re Eckart,* 166 U. S. 481, 482-483, 41 L. Ed. 1085, 1086, dealt with a State prisoner who had been tried on an information charging that he had unlawfully and feloniously and with malice killed a man. The verdict of guilty had failed to specify which of the three degrees of murder into which the Wisconsin law divided the crime had been committed. The claim in habeas corpus was that since the punishment varied with the degree of guilt, the court was without jurisdiction to pass sentence and judgment and the deprivation of liberty under such an invalid sentence was without due process of law. The Wisconsin Court had held the conviction was erroneous but was not a jurisdictional defect, and the Supreme Court concurred, saying:

"The verdict clearly did not acquit him of the crime with which he was charged, but found that he had committed an offense embraced within the accusation upon which he was tried. It was within the jurisdiction of the trial judge to pass upon the sufficiency of the verdict and to construe its legal meaning, and if in so doing he erred, and held the verdict to be sufficiently certain to authorize the imposition of punishment for the highest grade of the offense charged, it was an error committed in the exercise of jurisdiction, and one which does not present a jurisdictional defect, remediable by the writ of habeas corpus. The case is analogous in principle to that of a trial and conviction upon an indictment, the facts averred in which are asserted to be insufficient to constitute an offense against the statute claimed to have been violated. In this class of cases it has been held that a trial court possessing general jurisdiction of the class of offenses within which is embraced the crime sought to be set forth in the indictment is possessed of authority to determine the sufficiency of an indictment, and that in adjudging it to be valid and sufficient acts within its jurisdiction, and a conviction and judgment thereunder cannot be questioned on habeas corpus, because of a lack of certainty or other defect in the statement in the indictment of the facts averred to constitute a crime."

See also, for similar holdings, *Crossley v. California,* 168 U. S. 640, 42 L. Ed. 610, and *Roth v. United States,* 295 F. 2d 364. In refusing to hold on habeas corpus that the trial, conviction and sentence based on a defective indictment amounted to a violation of a fundamental or constitutional right or privilege, or made the judgment and sentence void or a nullity, or caused the court to lose jurisdiction, the Supreme Court said in *Dimmick v. Tompkins,* 194 U. S. 540, 552, 48 L. Ed. 1110:

"the indictment charged enough to show the general character of the crime, and that it was within the jurisdiction of the court to try and to punish for the

offense sought to be set forth in the indictment. If it erroneously held that the indictment was sufficient to charge the offense, the decision was within the jurisdiction of the court to make, and could not be re-examined on habeas corpus. The writ cannot be made to do the office of a writ of error. Even though there were, therefore, a lack of technical precision in the indictment in failing to charge with sufficient certainty and fullness some particular fact, the holding by the trial court that the indictment was sufficient would be simply an error of law, and not one which could be re-examined on habeas corpus."

See, too, *Kohl v. Lehlback,* 160 U. S. 293, 40 L. Ed. 432, where it was held that it was for the State court, which had jurisdiction of the offense and the accused, to determine if the indictment charged murder in the first degree, and, also, *Howard v. Fleming,* 191 U. S. 126, 48 L. Ed. 121.

Bowie has shown no fundamental unfairness, no unconstitutional deprivation of personal rights or liberty, no void judicial proceeding in his trial, conviction or detention. The second count of the indictment charged a crime. Indeed, much of the appellant's argument is based on his assertion that it charges the crime of rape rather than the crime of assault with intent to rape. The count can be read to charge rape but we find it clear that it was meant to charge intent to rape. If the word "and" which immediately precedes "assault" is stripped of its last letter and the word "did" which is between the words "feloniously" and the phrase "ravish and carnally know," is changed to "to," the count in essence would be in the usual form of a charge of assault with intent to rape, reading "that the said Frank Bowie on the said day, in the said year, at the City aforesaid * * * upon one Nettie Graham, feloniously did make an assault with intent * * * feloniously to ravish and carnally know * * *." This, we think, was the true meaning of the second count but whether it be read as charging rape or intent to rape it stated an offense of which the Criminal Court of Baltimore had jurisdiction. For a discussion of the difference between an indictment which completely fails to state an

offense and one which alleges all the essential elements of the offense intended to be charged and apprises the accused of the nature and cause of the accusation against him, as we think count two did here—even though it is defective in its allegations or is so inartificially drawn that it would have been open to attack in the trial court—see *Putnam v. State,* 234 Md. 537.

Without doubt, the second count, together with the other counts of the indictment, gave Bowie full notice and warning that he was accused of sexually assaulting Nettie Graham on a specified day in various ways. He attempted at the trial to meet and refute these charges by denying that he committed any sexual act with or upon Nettie Graham and, on the reopening of the case, offered in his defense, testimony tending to show that whomsoever had attacked Nettie Graham had not raped her as the first count charged but, rather, was guilty of no more than assault with intent to rape, the accusation made by the second count. Certainly, the inartificiality of the intent count did not prejudice Bowie. He could have done no more than he did if the intent count had been in perfect form, and, without doubt, the result would have been the same.

Bowie, having been fully aware of the crimes of which he was charged, was convicted after a scrupulously fair trial at which he was assisted by able counsel. His conviction and sentence were legal and constitutional and his challenge to the legality and propriety of his detention must be rejected.

*Order affirmed.*