## JAMES LOUIS WILLIAMSON *v.* STATE OF MARYLAND

[No. 690, September Term, 1974.]

*Decided March 18, 1975.*

---

The cause was argued before THOMPSON and LOWE, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Gerald A. Kroop,* with whom was *Harry A. E. Taylor* on the brief, for appellant.

*James I. Keane, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City*, and *Cornelius D. Helfrich, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

## Trial by Court or Jury

In *State v. Zimmerman*, 261 Md. 11, where the record reflected only defense counsel's verbalization of the election of a bench trial, the Court of Appeals decided that a post-conviction proceeding was the most appropriate forum for deciding in the first instance whether the defendant had knowingly foregone his right to jury trial. The Court concluded that a "preferable practice" in accepting an election of trial by the court was for:

> ". . . the trial judge to determine on the record whether this is a knowing election on the part of the accused of a court trial in lieu of a jury trial . . . ." *Zimmerman*, 261 Md. at 25.

Appellant seizes upon that closing paragraph, and asks us to go two steps beyond. He would have us not only elevate the foregoing "preferred practice" to a compulsory ritual — an alternative this court expressly rejected in *Miller v. Warden*, 16 Md. App. 614, 624 — but also require that the procedure apply in the opposite situation, *viz.*, where the accused elected a jury trial in lieu of a court trial. He would have the court educate the defendant upon the advantages of trial by judge alone.

We note at the outset that, unlike the facts before the *Zimmerman* Court, this appellant personally chose to be tried by a jury:

> "THE COURT: Trial by Judge Perrott or a jury?
>
> MR. WILLIAMSON: By a jury."

As in *Zimmerman*, however, appellant has never indicated that he wanted anything other than the mode of trial he

selected and made no objection on that basis at the trial. We therefore decline to decide the ultimate question of appellant's voluntary and knowledgeable election. The evidentiary basis for his argument, if there is one, has not as yet been established and thus must await post-conviction proceedings. Md. Rule 1085; *Zimmerman, supra,* 261 Md. 11.

We will, however, decide the penultimate question of the trial court's responsibility when the accused elects a jury trial. Appellant directs our attention to Maryland Rule 741 which provides that he "may elect to be tried by jury or by the Court." Pointing out the historical (and somewhat unusual) importance of the court trial in Maryland law, he then warms over dishes we have served to others and serves them back to us morsel by morsel:

> "[J]udges are men of discernment . . . ." *State v. Babb,* 258 Md. 547, 550.
>
> A judge presides impartially because of his "professional expertise, experience and judicial temperament . . . ." *State v. Hutchinson,* 260 Md. 227, 233.
>
> The court trial "is a boon." *Rose v. State,* 177 Md. 577, 581.
>
> Judges have "wisdom and experience." *Gunther v. State,* 4 Md. App. 181, 184.

Using our pride, like that of Brutus, as the fatal flaw with which he would ensnare us, appellant reasons that, at the very least, he should have been advised of the multitude of admirable qualities he was foregoing by electing trial by jury.

Hoist as we are upon our own petard we dare not grimace lest we show signs of hurt. We are amused, if not bemused, by appellant's argument, but find ourselves none the less unpersuaded. Having decided that the trial judge need not affirmatively inquire into an accused's decision to forego a jury trial, *Miller v. Warden,* 16 Md. App. at 624, we are certainly not going to impose that obligation when the defendant chooses to exercise his jury trial right. Trial by

jury is the manner of trial guaranteed a defendant by both the Maryland Declaration of Rights, Articles 5 and 21; and the Federal constitution, 6th and 14th Amendments, *Duncan v. Louisiana*, 391 U. S. 145. The court trial in Maryland has been provided as an alternative to defendant as a matter of governmental largesse; and our self-laudatory remarks, when read in context, were meant simply to point out that the court trial alternative is not necessarily a deprivation, and indeed has some advantages including "expertise" and "experience." In any event, the trial judge need only ask which mode of trial is preferred, and if counsel responds, satisfy himself that the decision was the defendant's. *Miller*, 16 Md. App. at 624.

## The Facts

While hardly so aristocratic as the Montagues and Capulets, nor quite as bloody as the Hatfields and McCoys, an interfamily feud became a bitter reality for appellant, James Louis Williamson, the woman with whom he lived and her children among whom were Denise (Nessie) Short and Calvin (Lee) Matthews. On August 8, 1973, sometime during the day, Lee got into a "fuss" with a Mrs. Kane. Nessie accompanied Lee to Mrs. Kane's house to talk with her. The discussion degenerated rapidly into an exchange of threats. Lee "reasoned" with a stick and Mrs. Kane with an iron pipe. From the combat that ensued one of the gladiators, Mrs. Kane, emerged with a bloody nose.

Later that day, Mrs. Kane's daughter, Jacqueline, related these events to her brother-in-law, Charles Kessler. He went to Lee's house, purportedly armed with a shotgun, and threatened Lee. In addition to blaming Lee for bloodying Mrs. Kane's nose, Mr. Kessler accused him of hitting his four year old son.

Upon hearing shots outside, Nessie, who was by then home, called the police. When they arrived, Nessie could no longer see Mr. Kessler from her house and was afraid to leave. After the police departed, appellant Williamson arrived home. Nessie and Lee told him what had happened. Thereafter it is unclear whether Mr. Kessler reappeared and

resumed his threats or whether Mr. Williamson and Lee sought Mr. Kessler. It *is* clear that the argument over their families' squabblings resulted in Mr. Kessler's death. The day ended when Mr. Williamson shot and killed Mr. Kessler — in self-defense according to Mr. Williamson. The jury did not agree. He was convicted of second degree murder and the use of a handgun in commission of a crime of violence, following trial in the Criminal Court of Baltimore, presided over by the Honorable James A. Perrott.

## Reputation Evidence

Appellant claims that the trial court erroneously excluded evidence of the deceased's reputation which he sought to establish both generally and by testimony of specific acts. Appellant's counsel below somewhat inartfully articulated the purpose or purposes the evidence was to serve. The trial court apparently treated the evidence as offered to prove the appellant's reasonable apprehension of danger and consequent need to defend himself at the time of the killing, and ruled accordingly:

". . . you have to sufficiently establish a knowledge
of the defendant of the propensity of the victim."

The trial judge was correct with respect to reputation evidence offered to prove the defendant's state of mind. Contrary to the general reputation rule which prohibits evidence of specific acts, a defendant asserting self-defense may offer evidence of specific acts *of which he was aware* at the time of the killing. Such evidence bears on the reasonableness of his actions:

"It is, of course, generally true that the reputation of the deceased cannot be shown by evidence of specific acts. However, where there is testimony tending to support the theory of self-defense, the presence of such testimony entitles the defendant to the benefit of certain rules of evidence which would not otherwise be available. It is competent for him to prove his knowledge of facts which would have a reasonable tendency to justify his

> asserted belief as to the existence of a deadly purpose in the overt acts of the deceased . . . . *On the issue whether or not the accused had reasonable grounds to believe himself in imminent danger, he may show his knowledge of specific instances of violence on the part of the deceased. Previous acts of violence by the deceased, especially if committed recently, known to the defendant,* might have an even stronger influence on his mind than would be produced by knowledge of the reputation of the deceased for violence." *Jones v. State,* 182 Md. 653, 659; *accord, Gunther v. State,* 228 Md. 404, 410; *Barger v. State,* 2 Md. App. 565, 568-569, *cert. denied,* 249 Md. 731. [Emphasis supplied].

Although counsel had proffered that he could prove specific violent acts of which his client was aware before the killing, after arguments and the trial court's ruling permitting him to do so, he was unable to produce the proffered evidence.

Trial counsel did, however, continue to doggedly assert the admissibility of evidence of deceased's reputation irrespective of appellant's prior knowledge. Throughout a substantial portion of the transcript, there is a recurring colloquy between trial court and counsel on its admissibility. In response to the trial judge's previously mentioned ruling, appellant's counsel at various times protested:

> "I am not attacking it from that viewpoint. I am only bringing it in as a matter of the man's reputation."

> "Your Honor, I am entitled to bring in as many witnesses as I wish to show a reputation in the neighborhood."

Then, after the court quoted dictum from *Jones v. State,* 13 Md. App. 677, 684, suggesting the admissibility of evidence of the deceased's reputation for violence the appellant's counsel stated:

> "I have contended that all along."

Although we must strain to do so, we will give appellant the benefit of any doubt and interpret his counsel's remarks as arguing the admissibility of the proffered evidence on an alternative, and conceptually distinct basis, *i.e.*, to bolster or corroborate his version of the circumstances of the encounter with the deceased. After reciting the prior knowledge of specific acts rule 1 Wharton, *Criminal Evidence*, § 236 goes on to explain that alternative:

> ". . . after the defendant has laid a proper foundation by adducing some evidence tending to show that he acted in self-defense, he may introduce evidence of the turbulent and dangerous nature of the victim. Where the purpose of the evidence is to show that the defendant had reason to apprehend harm, it must appear that at the time of the encounter he had knowledge of the victim's reputation, because otherwise his conduct could not have been influenced thereby. *But where the purpose of the evidence is to corroborate testimony for the defendant as to the circumstances of the encounter, such corroborative evidence is admissible whether the defendant had knowledge of the victim's reputation or not.*" [Emphasis supplied].

The issue thus resolves itself into one of relevancy. Does evidence of the victim's reputation, whether or not known to the defendant, make the testimony regarding appellant's encounter with the deceased "more probable than it would be without the evidence?" C. McCormick, *Evidence* (2d ed.), § 185 at 437, *Gray v. State*, 10 Md. App. 478, 487, *cert. denied*, 261 Md. 725. In the case at bar the appellant had introduced evidence tending to show that he shot the victim in self-defense. The State had produced only one witness, the victim's sister-in-law, who testified that although she knew the victim well, she had never seen him carry a gun. Since appellant testified that he shot Mr. Kessler because he was armed with a shotgun and threatened him and children in the house, evidence of the victim's propensity for violence

and shotguns was crucially important, if for no other purpose than to counter the inference of pacifism conferred by the sister-in-law's testimony.

Although this Court has dealt many times with the admissibility of reputation as bearing on the accused's state of mind when self-defense is raised, we have never dealt directly with reputation evidence as tending to corroborate appellant's account of the circumstances of the killing. In *Jones v. State*, 13 Md. App. 677, 685, n. 1, Judge Thompson expressly declined, as unnecessary, to rule upon that issue, notwithstanding the fact that he had included significant dictum on the point in his opinion:

> "At the conclusion of the testimony the appellant proffered as a witness, the deceased's mother stating that she would testify to the violent reputation of the deceased. The court declined to permit the witness to testify, ruling that since she had been present in the courtroom during the entire trial, and not sequestered as were all other witnesses, pursuant to Md. Rule 753, she could not testify. Appellant also proffered the daughter and sister of the deceased for the same purpose but the court also declined to permit their testimony on the same basis. Even though the admission of the testimony of witnesses who violate a sequestration order is in the sound discretion of the trial judge, *Hill v. State*, 9 Md. App. 65, 262 A. 2d 573, we think the trial judge probably should have admitted the testimony of the mother, daughter and sister of the deceased as to his reputation for violence. We do not need to rule upon the point since we find reversible error elsewhere." *Id.* p. 684.

We now declare what Judge Thompson implied. Assuming the requisite of relevancy, evidence of the victim's violent reputation is admissible as corroborative of appellant's self-defense account of the crime. Unlike the state-of-mind exception allowing evidence of specific acts, however, the

customary rule allowing only evidence of general reputation applies.

Here, despite the trial judge's expressions to the contrary, as each defense witness was called he permitted appellant to elicit that the victim's reputation was bad and that he had a penchant for shotguns. Objections to questions regarding specific acts were consistently and properly sustained. Regardless of the condition of prior knowledge erroneously expressed as a prerequisite in the court's ruling, the trial judge properly admitted the evidence appellant sought to introduce. Whatever the judge's reasons, the admissible evidence of the victim's general reputation that appellant wanted in, came in. The evidence of specific acts of violence was properly precluded for reasons above stated. The appellant has no ground to complain.

## The Bloody Nose

Appellant's objection to introduction of a photograph of Mrs. Kane's bloodied nose may be summarily dealt with. We have examined the photograph and in the light of the criteria set out in *Carroll v. State,* 11 Md. App. 412, *cert. denied,* 262 Md. 745 we cannot say the trial judge abused his discretion in admitting it.

Although the photograph showed an injury inflicted by someone other than the appellant, the event depicted was the *causa belli* precipitating the day's events and thus obviously relevant. *Peterson v. State,* 15 Md. App. 478, 501-502, *cert. denied,* 266 Md. 735, 738, 741. As we see it, dramatization of the fight between Mrs. Kane and Lee aided rather than detracted from appellant's argument of self-defense.

## Reconsideration of New Trial Grant

After guilty verdicts were rendered against appellant, sentencing was postponed pending presentence investigation. At the disposition hearing three months later, appellant's counsel moved and argued for a new trial on the basis that the motions for judgment of acquittal should have been granted. The Assistant State's Attorney who had tried the

case had since departed from the office and another
Assistant was sent in his stead. Claiming no notice of the
new trial motion and confessing no knowledge of the facts of
the case, the Assistant asked that the matter be continued to
allow him to prepare. Judge Perrott, obviously perturbed at
what he termed the lack of "continuity" in the State's
Attorney's Office, told appellant's counsel:

> "I will grant your motion for new trial, Mr.
> Kaplan."

The State strongly protested and asserted:

> "I am sure there is an argument to be presented."

The court agreed, saying "I know there is," and acquiesced
in the State's request for a two-day continuance, but with
the following caveat:

> ". . . let the message go out that there is to be
> continuity."

At the subsequent hearing the original prosecutor argued as
amicus curiae and the motion was denied. When appellant's
counsel objected to the reversal of the apparent grant of the
motion, the court responded:

> "I didn't grant it."

Appellant acknowledges that the majority of jurisdictions
permit reconsideration of the grant of a motion for new
trial, 24 C.J.S., *Criminal Law*, § 1510, 58 Am.Jur.2d, *New
Trial*, § 217, but argues that the Maryland rule should be
that once the motion is granted, reconsideration is
prohibited. Although there may be situations where
reconsideration of the grant or denial of a new trial is
arguably inappropriate,[1] the present case is clearly not such
a situation. Sentencing had not taken place, thus judgment
had not been entered.

We further note the use of the word "will" in the trial
court's language, "I will grant your motion." We are told by

---

1. We intimate no opinion thereon.

*The American Heritage Dictionary of the English Language*
that use of that verb as an "auxiliary followed by a simple
infinitive [grant] . . . can indicate:

1. Simple futurity . . .
2. Likelihood or certainty . . .
3. Willingness . . .
4. Requirement or command . . .
5. Customary or habitual action . . .
6. Capacity or ability . . .
7. . . . Probability or expectation . . . ."

The fact that the judge did not treat the matter as ended by
his statement — which if interpreted as appellant urges
would have concluded the case — but rather granted the
continuance urged upon him by the State to permit
argument to be presented thereafter, clearly indicates his
intention in using the term to express either a "probability
or expectation" or a "simple futurity." In context it cannot
be seriously argued that it indicated "certainty." We
interpret the language in accordance with the court's actions
and expressions as meaning a future intention to grant,
rather than a present order. Furthermore, appellant's
argument of insufficiency of evidence was the same he had
unsuccessfully made twice before on motions for judgment
of acquittal. At no time did the trial court indicate
concurrence with the merits of appellant's argument; on the
contrary, Judge Perrott acknowledged the significance of the
State's argument, criticizing only "the system." While
perhaps over-reacting, the trial judge was merely
dramatizing his displeasure with the State's
unpreparedness. Even if the motion had been granted, the
reversal of that decision was within the trial judge's
discretion under the circumstances indicated. Annot., 145
A.L.R. 400.

*Judgments affirmed.*