RONALD D. JOHNSON *v.* STATE OF MARYLAND

[No. 268, September Term, 1977.]

\* \* \*

GLEN E. GRAINGER *v.* STATE OF MARYLAND

[No. 324, September Term, 1977.]

\* \* \*

LIONEL LEVON COOK *v.* STATE OF MARYLAND

[No. 325, September Term, 1977.]

\* \* \*

GREGORY HUGHLEY *v.* STATE OF MARYLAND

[No. 474, September Term, 1977.]

*Decided November 15, 1977.*

The cause was argued before MENCHINE, DAVIDSON and LOWE, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* on all briefs; *Mark Colvin, Assistant Public Defender* on the brief for Ronald D. Johnson and *Geraldine Kenny Sweeney, Assistant Public Defender,* on the brief for Gregory Hughley, appellants.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City, Mark Cohen* and *James F. Schneider, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

The unrelated appeals of Ronald D. Johnson, Glen E. Grainger, Lionel Levon Cook and Gregory Hughley were consolidated for argument in this Court because all involved

common questions of law. They will be the subjects of a single opinion.

All had been convicted and sentenced for unrelated offenses after bench trials in the Criminal Court of Baltimore. In each trial: (a) the accused was found guilty of a criminal offense; (b) the finding of guilt was stricken prior to sentence in order that the accused might be released on his initial bail pending preparation of a presentence report; (c) the guilty verdict was thereafter reinstated by the trial judge; and (d) sentence was imposed.

The legal issues common to all cases are thus presented in the briefs of the appellants:

"I. The trial judge erred in sentencing the Appellants after the guilty verdicts had been stricken.

II. The Appellants' second conviction constituted a violation of the prohibition against double jeopardy."

I.

Appellants have cited no case supporting the contention that sentencing after guilty verdicts had been stricken but later reinstated constituted reversible error. The Court has found none.

This Court held in *Williamson v. State,* 25 Md. App. 338, 333 A. 2d 653 (1975), *cert. denied,* 275 Md. 758 (1975), that a trial judge possessed the discretionary power to reverse his decision granting a new trial when a lack of finality in the initial grant was apparent from the record. We find the decision persuasive here.

The subject records demonstrate with crystal clarity that the action of the trial judge in striking the guilty verdicts was in no sense motivated by doubt concerning the guilt of the accused. On the contrary, the record in each case plainly shows that such action had been taken so that the accuseds might remain free on initial bail bond without being subjected to additional costs for new bail.

We find it unnecessary to pass upon the correctness of the apparent conclusion of the trial judge that conviction without sentence would have discharged the bail obligation and compelled confinement pending sentence unless new bail was furnished. It would appear, however, that the clear weight of authority is to the contrary. Annot. 20 ALR 594, 624-27. *Contra, Kinder v. Richeson,* 264 S. W. 982, 983 (Mo. 1924).[1]

It is manifest from each record that the trial judge: (a) did not intend the striking of the guilty verdict to be his final act; (b) did not retreat from his conclusion that the accused was guilty beyond a reasonable doubt; and (c) intended to reinstate the several guilty verdicts after consideration of pre-sentence reports. We are persuaded that the trial judge possessed discretionary power to strike the several verdicts of guilty and subsequently to reinstate the same. *Williamson v. State, supra.*

Although the appellants, explicitly in Cook and Johnson and implicitly in Grainger and Hughley, willingly accepted the indulgence of the trial judge and entered no caveat to the action of the trial court striking the verdict; in reinstating it; or in imposing sentence and thus, did not preserve the issue for appellate review, Maryland Rule 1085, we shall consider the double jeopardy contention for the reason given in *Johnson v. State,* 3 Md. App. 105, 108-09, 238 A. 2d 286, 288 (1967). An added reason for our decision to consider the issue stems from the circumstance that other cases making

---

1. That question in Maryland is no longer open following the adoption of Maryland Rule 722, effective July 1, 1977. That Rule reads in pertinent part as follows:

"Rule 722 Bail Bonds

. . .

j. Discharge of Bond . . .
The bail bond shall be discharged when:

(a) all charges to which the bail bond applies have been disposed of by a *nolle prosequi,* stet, dismissal, acquittal, or probation before judgment or imposition of sentence;
(b) the defendant has been sentenced: . . ."

the same contention are presently pending in other appeals to this Court.

Appellants' argument boils down to the following syllogism:

(Major premise)   The striking of the guilty verdict was tantamount to a verdict of not guilty.

(Minor premise)   The not guilty verdict triggered appellants' Fifth Amendment right to freedom from being "twice put in jeopardy."

(Conclusion)   Reinstatement of the guilty verdict with consequent sentence violated this Fifth Amendment right.

The argument is the purest sophistry. Its basic flaw is the invalidity of its major premise. In each of the subject cases it is patent that the striking of the guilty verdict was interlocutory in character; temporary in effect; and intended to be followed by further proceedings within the same trial. In sum, the striking of the verdicts was not "tantamount to a not guilty verdict." The syllogism's conclusion collapses with rejection of its major premise.

We think that the language of Judge Levine, speaking for the Court of Appeals, in *Bynum v. State*, 277 Md. 703, 707-08, 357 A. 2d 339, 341-42 (1976), is strikingly applicable here:

"There is, nevertheless, a fundamental flaw in appellant's claim that he was twice placed in jeopardy. Double jeopardy is not suffered unless a man is twice put to trial. *See Bowie v. State*, 234 Md. 585, 593, 200 A. 2d 557, *cert. denied*, 379 U. S. 864 (1964); Fisher, *Double Jeopardy: Six Common Boners Summarized*, 15 U.C.L.A. L. Rev. 81, 86 (1967). The purpose of the prohibition of double jeopardy, questions of double punishment aside,

finds expression in the maxim *nemo debet bis vexari pro una et eadem causa,* no one shall be twice vexed for one and the same cause. In the context of a case such as this, where the defendant claims that his conviction was barred by a previous acquittal, two basic double jeopardy policies are involved. The first is the notion that guilt should be established only by proving the elements of the offense to a single jury, that the prosecution should be denied the right to increase the probability of obtaining a conviction by repeated prosecutions. And the second, more general policy, one involved in a trial subsequent to either an acquittal or a conviction, is the right not to be subject to harassment. More specifically, a defendant is not to be put to the expense of defending himself in successive unnecessary trials of the same issue, subjected to the stigma which attaches in further criminal prosecutions, or denied the psychological security, available in civil cases by reason of the doctrine of res judicata, of considering a matter once tried to be closed. *See* Comment, *Twice in Jeopardy,* 75 Yale L. J. 262, 266-67 (1965); Comment, 65 Yale L. J. 339, 340-41 (1956).

"It is evident that where, as here, the defendant is subjected to but a single prosecution, trial and jury verdict, there exists none of the evils which the double jeopardy prohibition is intended to prevent. Appellant has neither been harassed by multiple prosecutions, nor has he been subjected to the increased probability of conviction attendant upon repeated trials. In short, appellant was but once placed in jeopardy." (Footnote omitted.)

In the earlier case of *Pugh v. State,* 271 Md. 701, 706, 319 A. 2d 542, 545 (1974), it had been said:

"It is therefore settled that once the trier of fact in a criminal case, whether it be the jury or the judge, *intentionally renders a verdict of 'not guilty,'*

the verdict is final and the defendant cannot later be retried on or found guilty of the same charge." (Emphasis added.)

In none of the subject cases was there an intentional rendition of a verdict of "not guilty." The appellants were not "twice put in jeopardy." Their Fifth Amendment constitutional guarantee in this area was in no way denied or abridged.

The appellant Johnson has raised one additional issue, the appellant Hughley two, requiring further discussion.

### Johnson Additional Issue

"Did the trial judge improperly assume the role of prosecutor in qualifying Tabatha Johnson as a competent witness?"

Ronald D. Johnson, an adult, had been charged with a sexual offense in the third degree with another person under age 14. Maryland Code (1957, 1976 Repl. Vol.), Article 27, § 464B (a) (3). The alleged victim, Tabatha Johnson, was a female child of eight years.

After the State's attorney had conducted a brief preliminary competency interrogation of the child, defense counsel objected to the competency of the witness. At that point the following colloquy between court and defense counsel took place:

> "THE COURT: Tabatha, let me ask you this —
>
> MR. RUBINSTEIN: Your Honor, I would object to your Honor questioning the witness in order to qualify her for the State, with all due respect, I think that's the State's job and not the Court's job.
>
> THE COURT: Okay. Your objection is noted.
>
> MR. RUBINSTEIN: May I have a blanket objection to all your questions?

THE COURT:    I would suggest, to protect the record, you object to my attempting to qualify her.

MR. RUBINSTEIN:    Yes, sir.

THE COURT:    Well, the objection relates to my doing just that so you don't have to object on that subject. Tabatha, do you go to Sunday School, do you?

THE WITNESS:    Some times.

THE COURT:    Some times. I see. And do you know the difference between the truth and not telling the truth, do you?

THE WITNESS:    Yes.

THE COURT:    And suppose you don't tell the truth, what would happen to you?

THE WITNESS:    I would get punished.

THE COURT:    And I will permit you, I am satisfied she knows the difference between the truth and an untruth and what happens to people who tell an untruth."

A judge has a right to ask questions in the course of a trial. We see nothing unfair or prejudicial in his questioning. There was no error. *Madison v. State*, 200 Md. 1, 12, 87 A. 2d 593, 598 (1951).

### Hughley Additional Issues

1. "Assuming arguendo that a valid conviction was entered, the trial court lacked jurisdiction to do so in that the charging document did not charge a crime."

2. "Assuming arguendo that a valid conviction was entered on a proper charging document, there

was insufficient evidence to support the conviction."

These issues are interrelated and will be considered together.

The Statement of Charges "formally charged that Gregory Hughley . . . on or about 17 July '76 at 4259 Park Heights Ave. unlawfully did attempt to break into the dwelling house of Garris McFadden situated at 4259 Park Heights Avenue with intent to commit therein a certain felony, to wit: Burglary and in furtherance of attempt to force the front door. . . ."

It is clear to us that the agreed statement of facts upon which the case was submitted for decision below was legally insufficient to establish that the accused had an intent to commit a felony. That conclusion is not, however, dispositive of the Hughley appeal.

Maryland Code (1957, 1976 Repl. Vol.) Article 27, § 31A, in effect at the time of this alleged offense, reads as follows:

"Any person who breaks and enters the dwelling house of another is guilty of a misdemeanor and, upon conviction thereof, shall be sentenced to imprisonment for a term of not more than three (3) years or a fine of not more than five hundred dollars ($500.00) or both."

An attempt to commit an offense constitutes a common law misdemeanor. *Fisher v. State,* 1 Md. App. 505, 510, 231 A. 2d 720, 723 (1967).

It will be observed that an attempt to commit the offense set forth in Article 27, § 31A, *supra,* is a lesser offense clearly falling within the greater charge alleged in the Charging Document.

The statement of facts upon which the cause was submitted below was legally sufficient to establish that the accused had made an attempt to violate the cited section. Thus, all elements essential to proof of a lesser offense necessarily included within the allegations of the greater offense were shown.

The question narrows, accordingly, to a determination whether proof of a lesser offense necessarily included in a charging document asserting a greater offense permits conviction of the former in this State.

The clear weight of authority is that conviction of a necessarily included lesser offense is permissible under a document charging a greater offense. The rule is thus stated in 2 Wharton's Criminal Procedure, § 292, at 127 (12th ed. Torcia 1975):

> "§ 292. *Lesser and included offenses.*
>
> At common law and under typical statutes, when an indictment or information charges an offense which includes within it a lesser offense, or an offense of a lower degree of the same general class, the accused may be convicted of such lesser offense. An offense qualifies as a lesser-included offense only if the elements of the included offense are fewer in number than the elements of the greater offense, and only if the greater offense cannot be committed without also committing the lesser offense."

*See also*: 41 Am. Jur. 2d *Indictments and Informations* § 313 (1968); 42 C.J.S. *Indictments and Informations* § 271 (1944).

The early decision of *Davis v. State,* 39 Md. 355 (1874) is persuasive that the above rule should be applied in this State. In *Davis* it was said:

> "When, therefore, a person is indicted for murder, in the technical language of the common law, he is charged with a crime, which in its proper sense, includes all circumstances of aggravation, and as all minor degrees are included in the major, he is liable to be convicted of the inferior, as well as of the higher grades of that offense, and *vice versa.*"

Factually the Hughley case falls within the rule as stated in Wharton, *supra*. We hold that rule of law to be applicable in this State.

Finding no error as to any of the several appeals, we shall affirm the judgments in all cases.

> *Judgments affirmed.*
> *Appellants to pay equal shares of*
> *the costs of the four appeals.*