607 A.2d 72

Harold ALSTON

v.

STATE of Maryland.

No. 865, Sept. Term, 1991.

Court of Special Appeals of Maryland.

May 27, 1992.

Harry Levy, Kenneth W. Ravenell and Schulman, Treem, Kaminkow & Gilden, Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Submitted Before GARRITY, ALPERT and MOTZ, JJ.

GARRITY, Judge.

The novel issue appellant presents for our determination is whether the trial court retained jurisdiction, after final judgment, to reconsider and vacate its order granting a criminal defendant a new trial.

Charged with having committed armed robbery at the Maryland National Bank on Pulaski Highway in Baltimore County on July 27, 1990, the appellant, Harold Alston, was convicted on November 1, 1990, by the Circuit Court for Baltimore County (Bollinger, J.) of robbery and was immediately sentenced to serve a three year period of incarceration. The appellant filed, on December 31, 1990, a Motion for New Trial based on newly discovered evidence. Following a hearing on February 20, 1991, the trial court granted a new trial based on the newly discovered evidence.

The newly discovered evidence derived from a newspaper article in *The Baltimore Sun*, which depicted a man-at-large suspected of robbing 23 banks in the Baltimore metropolitan area. The suspect in the article, described as a black male between 25 and 30 years old and having a height of 6′6″, was alleged to have robbed the Carrollton Bank in Towson on November 15, 1990. On that date, however, the appellant had been incarcerated awaiting sentencing on the robbery at issue. At trial, the appellant, who is 5′9″, argued that, based on his height versus the height of the bank counters, he could not have been the person displayed in the bank photographs who appeared taller. Therefore, at the February 20, 1991 hearing, the appellant argued, based on the newly discovered evidence, that the "man-at-large," and not he, was responsible for the July 27, 1990 robbery of which he had been convicted. In ruling on the new trial motion, the trial court noted that the bank robber depicted

in the *Sun* paper and the robber depicted in the Maryland National Bank robbery had worn similar hats, and stated:

I would have second thoughts had this evidence been presented to me, and I can clearly say I would have. Besides that, what I find that this does is this enables, with modern day photography, the opportunity to subpoena the Sunpapers records get the negative and try to determine by blowups a comparison of these two photographs and present that to the trier of fact. . . .

So, I think in view of all of this he is entitled to and out of an abundance of fairness to give this defendant the right to present that evidence to a new trier of fact. I will grant the motion for a new trial.

On March 1, 1991, the State filed a Motion to Reconsider the court's order granting a new trial. The foundation of the State's motion was that the Sunpapers article and photograph had been erroneous in that the photo actually showed a robber of a bank in Baltimore City and that the height of the robber was 5'10". The State further proffered, through photograph enhancement, that the hats worn by the Maryland National Bank robber and by the robber depicted in the news article were actually different.

On April 9, 1991, the circuit court conducted a hearing on the reconsideration motion. On April 16, 1991, Judge Bollinger entered his written opinion and order striking the February 20, 1991 order which had granted Alston a new trial. In his Opinion and Order, Judge Bollinger stated that, pursuant to the Motion for New Trial based on newly discovered evidence,

[a] hearing was then held on February 20, 1991 at which time the defense introduced into evidence a Baltimore Sun newspaper article dated November 16, 1990. The article allegedly reported a bank robbery occurring on November 15, 1990 at the Carrollton Bank of Baltimore located in Towson. Accompanying the article was a photograph that was purported to have been taken during the robbery on November 15, 1990. In ruling on the defendant's Motion for New Trial, the Court relied heavily upon this

information. The Court being the trier of fact in the initial trial, considered the resemblance between the photograph in the newspaper dated November 15, 1990 and the photograph from the robbery in the case at bar. The Court noted that the defendant had been in custody at the time of the November 15, 1990 robbery. Furthermore, the Court noted that the strong similarities between the photographs presented sufficient newly discovered evidence to warrant the granting of a new trial.

Thereafter, on March 1, 1991, the State submitted a Motion to Reconsider the Court's Order Granting a New Trial. On April 9, 1991 a hearing was held on that motion with the defendant present. At the hearing evidence was presented which lead the Court to find that the photograph in the November 16, 1990 newspaper article was not a photograph taken at the Carrollton Bank robbery on November 15, 1990. The Court therefore finds that the basis upon which it granted the Defendant's Motion for New Trial *was erroneous*. (Emphasis added).

As a result, appellant Alston presents us with the unresolved question expressly left open in *Christian v. State*, 309 Md. 114, 120, n. 3, 522 A.2d 945 (1987), as to "[w]hether a new trial order entered *after* final judgment may be reconsidered and, if so, within what time it may be reconsidered."

The appellant offers three arguments as to why the trial court should not be permitted to reconsider the granting of a Motion for New Trial following entry of a final judgment. First, appellant argues that such a rule would eliminate any irresolution by the trial judge who, in this case, also acted as the trier of fact. Specifically, the appellant asseverates that, although the trial judge expressed concern and reluctance about the newly discovered photographic evidence, "new trial orders ought not be reconsidered simply because the trial court becomes uncomfortable with its rationale of a guilty finding or the granting of a new trial." Second, appellant argues that the trial court's reconsideration should not have been permitted where its "only" purpose

for the reconsideration was to grant the State the opportunity to refute the evidence which had been presented in the new trial motion. To illustrate, appellant claims that the State had from December 31, 1990 to February 20, 1991 to "marshal any defenses it may have had." Thus, the reconsideration operated as a "reward" to the State for having failed to prepare adequately for the February 20, 1991 hearing. Finally, the appellant argues that a rule precluding reconsideration of a new trial motion disposition would provide desirable finality.

The State, in contrast, contends that the trial court had jurisdiction to reconsider its ruling granting the appellant a new trial because it was within the same term of court wherein the new trial order had been granted. Furthermore, the State maintains that because the trial court's determination for a new trial was predicated upon newly discovered evidence, which actually proved to be erroneous, it was not unreasonable to permit the court to circumvent the expenditure of the valuable resources attendant to a new trial. Finally, the State argues that the trial judge's April 16, 1991 action of reconsidering his February 20, 1991 order can be sustained under its revisory power pursuant to Md.Cts. & Jud.Proc.Code Ann., § 6–408 (1989 Repl.Vol.).

In *Christian v. State, supra,* Christian was convicted on May 3, 1984 of daytime housebreaking. The following day, while awaiting sentencing, he filed a Motion for New Trial. Christian argued that the trial court should have excluded certain testimony regarding statements he had made to the victim because the State had failed to inform defense counsel of the existence of the statements prior to trial. The trial court granted his Motion for New Trial based upon the State's failure to comply with Maryland Rule 741 (now Rule 4–263).[1] In turn, the State filed a motion seeking revision of the trial court's new trial order. The motion was based

---

1. Md. Rule 4–263 provides, in pertinent part:

on a decision made by the Court of Appeals a few days earlier in *White v. State,* 300 Md. 719, 481 A.2d 201 (1984), which interpreted Rule 741 as requiring the State to disclose to defense counsel prior to trial only those statements the defendant had made to State agents. Ultimately, the trial court granted the State's motion to vacate its order granting Christian a new trial.

On appeal, the Court of Appeals affirmed this court's affirmative conclusion to the issue of whether a trial judge had the authority to reconsider and vacate his prior order granting a new trial. The Court held that the trial court's new trial order was an interlocutory order and, as such, was subject to the court's revisory power prior to the sentencing stage. In its decision, however, the Court of Appeals left undecided the issue herein of whether "a new trial order entered after final judgment may be reconsidered and, if so, within what time it may be reconsidered." *Id.* at n. 3.

In *Williamson v. State,* 25 Md.App. 338, 333 A.2d 653, *cert. denied,* 275 Md. 758 (1975), defense counsel moved, at the sentencing hearing, for a new trial arguing that a judgment of acquittal should have been granted. Although the trial judge stated, "I will grant your motion for a new trial," the court eventually denied granting a new trial and then imposed sentencing. On appeal, we observed, speaking through Judge Lowe, that, although the context of the court's language indicated "certainty," the trial judge's actions and expressions amounted to a future intention to grant the motion. As the sentence had not been entered,

---

Discovery and inspection in circuit court shall be as follows:

. . . . . .

(b) *Disclosure Upon Request.*—Upon request of the defendant, the State's Attorney shall:

. . . .

(2) *Statements of the Defendant.*—As to all statements made by the defendant to a State agent that the State intends to use at a hearing or trial, furnish to the defendant, but not file unless the court so orders: (A) a copy of each written or recorded statement, and (B) the substance of each oral statement and a copy of all reports of each oral statement.

we held that it was within the court's authority and discretion to reconsider and deny the motion. *Id.* at 348–49, 333 A.2d 653 (citing 24 C.J.S. *Criminal Law,* § 1510, 58 Am. Jur.2d *New Trial,* § 217 Annot. 145 A.L.R. 400).

In support of his proposition that Judge Bollinger lacked authority to reconsider his prior order granting a new trial, the appellant relies on *Griffin v. State,* 565 So.2d 545 (Miss.1990). That reliance, however, is misplaced. Examination of *Griffin* reveals that the State, rather than appellant, should prevail in this Court.

In *Griffin,* the Supreme Court of Mississippi addressed the issue of whether the circuit court had the legal authority three years later to set aside its order for a new trial. In that case, Melvin and Larry Griffin were jointly indicted on a three-count indictment charging drug related offenses. The jury returned verdicts of guilty on all counts on November 30, 1983, and the Griffins filed a motion for a new trial. The court granted a new trial as to Counts II and III, but denied the motion as to Count I.

While their appeal was pending as to Count I, however, the Griffins fled the State and were recaptured three years later. Thereupon, the State filed a motion requesting that the order granting a new trial on Counts II and III be vacated. Although the lower court granted the motion, the Griffins argued on appeal that the State was barred from having the order set aside because it had failed to perfect a cross-appeal from the court's grant of new trials on Counts II and III. In reversing the trial court, the Court held that:

> the dispositive portion of the circuit judge's order setting aside the Griffins' convictions under Counts II and III of the indictment had the same finality as a judgment, and certainly, with *no further action being taken therein the ensuing regular term of the court,* the circuit court was without authority thereafter to reinstate the convictions. (Emphasis added).

*Id.* at 549.

In *Ayre v. State,* 291 Md. 155, 433 A.2d 1150 (1981), the Court addressed the issue of the trial court's inherent

revisory power to vacate its order striking an appeal. Judge Digges concluded on behalf of the Court that Maryland adopted the common law principle that a Court has authority over its judgments and orders during the term at which they are entered, and stated,

> "[i]n Maryland all judgments are under the control of the court during the term in which they are entered, and during that time the court has inherent power to strike out or modify judgments in both civil and criminal cases." *Madison v. State*, 205 Md. 425, 431 [109 A.2d 96] (1954). In the absence of a statute or rule either modifying or rescinding this power, such authority survives ... [citations omitted]. So, assuming the State is correct in its assertion that no rule or statute exists authorizing or otherwise regulating the vacation of the dismissal order, the Criminal Court of Baltimore possessed inherent authority to strike its judgment dismissing the appeal at any time during the term of court in which that order was rendered.

*Id.* at 159–60, 433 A.2d 1150.

The considerations of finality that Alston contends militate in favor of the position that he espouses are not jeopardized by applying the common law principle stated in *Ayre* in the instant case. The terms of court specified in Maryland Rule 1206 are not of undue duration and are easily determined. Pursuant to Maryland Rule 1206 d, the Circuit Court for Baltimore County has three terms of court in a given year. The terms begin on the second Monday in January, May, and September, respectively, and continue until the beginning of the next term.

Thus, we hold that as the trial court granted appellant's Motion for New Trial and vacated that order within the course of the same 1991 January term, it possessed inherent common law authority to do so.

Procedurally, the trial court set in motion hearings to ferret out the truth of the matter, and learned that the basis upon which it had granted appellant's motion was

erroneous. We are not persuaded by appellant's apparent estoppel argument that "any mistake attributable to the information printed in the Sunpapers article, and relied upon by the trial judge, could have been discerned by the State through investigation, such as photographic enhancement, between the date appellant filed his new trial motion (December 31, 1990) and the date of the motion hearing (February 20, 1991)." In short, it was Alston himself who had introduced the newly discovered evidence, which ultimately proved to be erroneous.

Indeed, the very purpose of providing a new trial based on newly discovered evidence, in either criminal or civil proceedings, is founded on assuring fairness in seeking the truth of the charge or complaint. In that process, the new evidence must be of such a nature that, when considered with the rest of the testimony, makes it "probable" that an acquittal or a different result would be obtained in another trial. *Angell v. Just,* 22 Md.App. 43, 54, 321 A.2d 830 (1974).

Under the circumstances of this case, we hold that the decision that a new trial was not warranted was not a clear abuse of discretion.

JUDGMENT AFFIRMED;
COSTS TO BE PAID BY APPELLANT.