# HOLIDAY NEWS LTD. *v.* STATE OF MARYLAND

[No. 482, September Term, 1982.]

*Decided December 9, 1982.*

The cause was argued before MOYLAN, LOWE and LISS, JJ.

*William E. Seekford* for appellant.

*Maureen O'Ferrall Gardner, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *John Prevas, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The corporate appellant here complains that its motion to dismiss a charging document as having issued without probable cause should have been granted by the Criminal Court of Baltimore. The charge of distributing obscenity originated in the District Court; however, appellant prayed a jury trial bringing the case before the Criminal Court of Baltimore. The State then notified appellant pursuant to Md. District Rule 734, that he was to be prosecuted as a subsequent offender. Through bargaining, the case was ultimately submitted to the court on a stipulated statement of facts. Appellant reserved its motion to dismiss the charging document for lack of probable cause, but agreed that it should be considered "not prior to trial but during the course of the trial", and then decided by the court "at the end of the production of the evidence . . . ."

The charging document was a criminal summons issued by a District Court Commissioner charging that the appellant

> ". . . did knowingly distribute to Det. G. Hoover an obscene magazine, to wit, 'Super Cock, #1' on 24 July 81."

This was a violation of Md. Ann. Code, Art. 27, § 418 which states that:

> "Any person who knowingly sends or causes to be sent, or brings or causes to be brought, into this

State for sale or distribution, or in this State pre-
pares, publishes, prints, exhibits, distributes, or
offers to distribute, or has in his possession with
intent to distribute or to exhibit or offer to distrib-
ute, any obscene matter is guilty of a misde-
meanor."

Appellant's complaint is that the summons was issued
upon affidavit of the officer which detailed his purchase of
the magazine from appellant. The officer then took the
magazine to a named District Court judge, who, according to
the officer's affidavit, "reviewed the magazine in its entirety
and found the same to be obscene." Appellant points out that
the magazine was not presented to the commissioner who
issued the warrant and contends that the judge's
extrajudicial opinion (to which the officer had attested in his
application applying for the summons) was not sufficient to
establish the probable cause necessary to warrant the issu-
ance of a charging document.

The State does not address the quantity or the quality of
the probable cause presented but contends it is of no conse-
quence because even assuming its underlying insufficiency,
dismissal of the conviction on appeal is not an appropriate
sanction.

"Assuming, arguendo, that the charging docu-
ment in this case was issued without probable
cause, and thus is illegal under the Fourth Amend-
ment, dismissal of the charges is not the sanction
applied. Even if an arrest is not based on probable
cause, it does not accord Appellant any relief with
respect to its request that the charges be dismissed.
It is well settled in Maryland that an illegal arrest
does not affect the jurisdiction of the court, is not a
ground for quashing the indictment, and does not
preclude trial and conviction for the offense.
*Hammond and Couser v. State,* 7 Md. App. 588
(1969); *see also Hager v. State,* 27 Md. App. 475, 477
(1975); *Wescott v. State,* 11 Md. App. 305, 308
(1971). Accordingly, the trial court properly denied
Appellant's motion to dismiss."

The State's premise is a slender reed, however, in that we have expressly avoided conclusively so holding in a recent case significantly apposite to the case before us. In *Schaefer v. State,* 31 Md. App. 437 (1976), we gave full deliberation to a similar probable cause question relating to criminal summonses. A reversal of a criminal conviction had been sought upon a single issue, *i.e.,* that the trial court erred in denying a pretrial motion to dismiss the charging document (a criminal summons) on the ground that it was issued without probable cause. *Id.* at 439. We addressed the quantum issue and affirmed the conviction because there had been sufficient probable cause to issue the summons. Significantly, however, we expressly denied any intimation of the propriety of voiding a conviction upon appellate review of the pretrial motion, had probable cause not been established. *Id.* at 447, n. 5. We pointed out that:

"Neither statute nor rule of this jurisdiction prohibits the trial of the defendant under an arrest warrant or summons to a defendant which is issued without probable cause."

In *Schaefer,* as here, there was no detention of the accused, and, absent such physical arrest, no search incident thereto. We expressly declined to decide whether proper sanctions would extend beyond evidentiary exclusions and detention prohibitions, although we did note, by a reference to Supreme Court cases, that even an illegal arrest or detention will not *always* void a subsequent conviction, citing *Gerstein v. Pugh,* 420 U.S. 103, 119 (1975); *Giordenello v. United States,* 357 U.S. 480, 485-487 (1958).

Anxious to apprise the new formed District Court's Commissioners that neither arrest warrants nor criminal summonses were to be issued except upon a determination of probable cause, we chose to address in *Schaefer* the need for some probable cause which underlay as an alternative argument the denial of the pretrial motion to dismiss. We also addressed the standard of proof of probable cause for that purpose. The question of the appropriateness of the sanction of post trial dismissal, which we avoided to reach the more

pressing issues there, is presented here by one of the parties for our determination. We need no longer avoid addressing it since no extraneous more urgent alternative question must be answered.

Although we will subsequently point out for the further enlightenment of commissioners that the unique evidence of probable cause to issue the summons in this case was adequate, the cursory assertion by the State that the conviction was not void — even assuming the absence of probable cause for the summons to have issued — would itself suffice to decide the issue raised by appellant.

— the sanction of dismissal —

Initially, by its very nature a summons — as well as the corporate capacity of the appellant — indicates that there was no arrest, detention, search or seizure incident thereto, involved in this case. Secondly, appellant did not press its motion pretrial, but submitted it to be decided along with the ultimate determination of guilt or innocence, after the statement of facts and all evidence had been submitted. This signifies that appellant was not seeking relief from any pretrial oppression, but was relying rather upon prospective technical appellate argument as an ace in the hole in the event of conviction. By agreeing to have the motion decided at the end of the evidentiary trial concomitant with the ultimate determination, appellant's pretrial rights are moot in light of the uncontroverted evidence to which appellant has stipulated.

But more pointedly, we hold that even if probable cause is lacking when a summons issues, we will not subsequently void an ultimate conviction. Nowhere, to our knowledge, have sanctions for insufficient probable cause to charge or arrest extended beyond evidentiary exclusions or detention prohibitions. The Supreme Court has even declined to retreat from the "established rule" that illegal arrest — or detention — does not void a subsequent conviction. *Gerstein v. Pugh, supra.* In reviewing our own mandates, the pattern is clear that the absence of probable cause to arrest only causes reversal when it affects such matters as evidence

seized incident to the arrest. Even when we do not void the conviction, we remand for retrial unless the suppression of the evidence creates an obvious insufficiency to convict upon retrial. See *Burks v. United States,* 437 U.S. 1 (1978). The absurdity apparent in voiding a conviction because the Application for Statement of Charges contained technically inadequate evidence of probable cause, *after* sufficient evidence has been admitted within the procedural safeguards of a trial and found to constitute guilt beyond a reasonable doubt, obviously underlies the Court of Appeals' reason for requiring mandatorily that all defects in the institution of a prosecution be moved *before trial.* Md. Rule 736 a 1. The post trial sanction of dismissal is inappropriate.

— probable cause —

The evidence that appellant had distributed obscene material in violation of Md. Ann. Code, Art. 27, § 418, varied from the affidavit of probable cause only in the sense that the magazine which had not been presented to the Commissioner — the obscenity of which even surpassed prurience — was before the court as evidence. The attesting officer had described in his affidavit to the Commissioner the time, place, price and circumstances under which he had purchased the magazine and the person from whom it was purchased at the store owned by appellant. This clearly provided "probable cause" that the magazine was knowingly distributed. But rather than expressing his own opinion that the distributed matter was obscene, or even leaving that conclusion to the Commissioner's personal observation, he attested that he had shown the magazine to Judge Lamdin (whom we judicially note is a District Court Judge) who, upon review, "found the same to be obscene."

This practice appears to be prevalent in Baltimore City in such cases, and appellant contends that procuring such extrajudical opinions is not sufficient to establish probable cause. While we are neither aware of a need for such extremes, nor are we assured of the propriety of a judge so

opining,[1] it is certainly "reasonably trustworthy" information that the matter distributed was obscene. It is comparable to an attesting officer who, having purchased what he believes to be a proscribed drug has it identified by a narcotic expert from whom he sought and elicited an opinion that the drug purchased was a specifically identified controlled dangerous substance. Seeking such expert assurance of his own opinion to aid the Commissioner's determination of probable cause clearly aids in establishing probable cause that a crime has been committed. The judge in this case acted as an "expert" applying the constitutional guidelines prescribed by the Supreme Court in *Miller v. California,* 413 U.S. 15, 24 (1973), which are

> "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

Necessarily implicit in a recent Court of Appeals opinion, *Smiley v. State,* 294 Md. 461 (1982), is the acknowledgment that any person of "ordinary intelligence" could distinguish proscribed obscenity from its innocuous counterpart. That Court has also held that judges (presumably simply by virtue of office) are not only experienced and professional people, *State v. Hutchinson,* 260 Md. 227, 233 (1970), but are extraordinarily discerning. *State v. Babb,* 258 Md. 547, 550 (1970).

---

**1.** The judge's "opinion" obtained during the investigation as support for a prospective criminal charge is not an appropriate nor recognized judicial function. The investigation and apprehension of criminals in our system of checks and balances is exclusively a function of the executive branch. If the judicial image of impartiality is to be maintained, the judiciary — at all levels — must remain aloof from pretrial practices which may appear to assist either party. This highly questionable practice should be promptly discontinued.

In *Hutchinson,* the Court said that:

"It is true that judges being flesh and blood, are subject to the same emotions and human frailties as affect other members of the specie; however, by his legal training, traditional approach to problems, and the very state of the art of his profession, he must early learn to perceive, distinguish and interpret the nuances of the law which are its 'warp and woof.' " *Id.* at 233.

Certainly no legal question has ever been acknowledged as having more legal nuances than that which is necessary to determine what is or is not obscene. That tortured constitutional history was addressed ad nauseam in *Miller v. California, supra,* by Chief Justice Burger and its "hodge-podge" composition is one of the few things upon which that Court could agree.

In *State v. Babb, supra,* the Court of Appeals not only recognized that judges were "men of discernment, learned and experienced in the law", but pointed out particularly that their "capabil[ity] of evaluating the materiality of evidence lies at the very core of our judicial system." *Id.* at 550. Surely such discernment, expertise and legal knowledge are not limited to the courtrooms and if judges can not be relied upon — even extrajudicially — expertly to distinguish that which is constitutionally obscene in accordance with the *Miller v. California* guidelines, how can one of "ordinary intelligence" readily recognize such distinctions? See *Smiley, supra,* 294 Md. at 465.

All that the commissioner needs in order to determine probable cause is such "reasonably trustworthy" information as would justify a "prudent and cautious man" in believing that the offense was committed and that the accused committed it. *Schaefer, supra* at 444.

"In determining the existence *vel non* of probable cause, the judicial officer may give consideration to the special significance which objects, happenings, and individuals may have conveyed to a trained,

experienced and knowledgeable person swearing to the facts set out. Those sworn facts may be based on hearsay information even from an unidentified informant, and need not reflect the direct personal observations of the affiant, but they must contain some of the underlying circumstances from which the affiant could be reasonably justified in a belief that the hearsay information was reliable or the informant was credible. The sworn facts should be interpreted in a common sense rather than a hypertechnical manner. Probable cause, however, may not be made out by statements which are purely conclusory, stating only the affiant's or an informant's belief that probable cause exists. See *Henry v. United States,* 361 U.S. 98, 102 (1959), *Brinegar v. United States,* 338 U.S. 160, 175-176 (1949)."

Although "probable cause" remains a constant definitionally, applying alike to searches and to arrests, with warrants or without warrants, *Hignut v. State,* 17 Md. App. 399, 409 (1973), as well as to summonses that entail neither arrest nor search incident, *Schaefer, supra* at 443, and the quantum is the same for all as well, *id.,* the "standard of proof is correlative to what must be proved." *Brinegar, supra* at 175, quoted in *Gerstein v. Pugh, supra* at 121. Considering the problems judicially acknowledged in determining what is or is not "obscene", *State v. Randall Book Corp.,* 53 Md. App. 30 (1982), a judge's discernment of what is or is not obscene is certainly "correlative" to proof of proscribed pornography. Just as any "cautious and prudent man" would be justified in relying upon a trained officer distributee's affidavit that a substance purchased by him was determined by an identified expert as a controlled dangerous one, so would he be justified in relying upon a similarly trained officer's oath that an identified judge had considered the distributed matter purchased by the officer as obscene. Acknowledged experts in things obscene are few and far between unless one is willing to rely upon one's own judgment. Surely if a judge's

extrajudicial opinion is not sufficiently reliable to indicate that a matter distributed by an accused constituted probable cause of obscenity, neither the opinion of the officer nor the commissioner himself would suffice for that purpose in this area of acknowledged difficulty. Indeed, in seeking expertise, one is hardpressed to find within any walk of life a person or group of persons more cognizant of what constitutes obscenity.

In the case before us, the commissioner complied with both statute (Md. Cts. & Jud. Proc. Code Ann., § 2-607) and rule (M.D.R. 706) in determining probable cause for the issuance of a criminal summons. While he could have requested the presentation of the magazine for his own perusal, subject to his authority to conduct investigations and inquire into the circumstances of any matter presented to him in order to determine probable cause, Cts. & Jud. Proc. § 2-607 (c), he is not required to do that if the application is itself determinative of probable cause. The application here passed muster as providing a basis for his determination that probable cause existed. It contained an affirmative allegation that the affiant personally received the distribution of matter which was identified as obscene by an extraordinarily discerning "experienced professional". It contained an affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it indicated the sources for the affiant's belief; and it set out facts upon which a finding could be made that appellant probably committed the crime alleged. *Schaefer, supra* at 447.

— second offense —

The second issue raised relates to the sentencing of the appellant under Md. Ann. Code, Art. 27, § 424 as a second offender. That section provides that a fine for violation "of this subtitle" is punishable by up to a thousand dollar fine or a year in jail. It adds further that:

"Any subsequent conviction of a violation *of this*

*subtitle* is punishable by a fine of not to exceed $5,000 or by imprisonment not to exceed three years, or both unless otherwise provided." (Emphasis added).

Appellant first argues that the evidence was insufficient to prove a prior offense justifying a second offender sentence because it consisted only of a copy of docket entries showing that Holiday News Ltd. represented by the same counsel as presently represented it, was charged with "Distr. Obscenity", found guilty by a jury and fined $750 and court costs by the same judge presiding in this case.

The initial argument on its face is so blatantly absurd that it hardly warrants discussion. Not only was the docket entry designation sufficient to show a conviction under § 418, which is under the same subtitle "Obscene Matter" as is the penalty section, § 424, but the very same presiding judge sat in both cases which would have justified his having judicially noticed, by personal participation, both convictions. See *e.g., Scott v. State,* 238 Md. 265 (1965).

Appellant's second argument submitted without authority (other than a resort to First Amendment catch phrase "chilling effect") is equally specious. It seems to contend that there is some undescribed impediment in a statute that permits an enhanced sentence for a second offense unless it is proven that the prior conviction was not

"for a different magazine or for a motion picture film or a book."

While we fail to see the significance of such a distinction, we note that the only "chilling effect" the statute has is for those who contemplate not once but twice violating the statutory proscriptions under the "Obscene Matter" subtitle. If the statute has such chilling effect, the obvious legislative intent has been carried out.

*Judgment affirmed.*
*Costs to be paid by appellant.*